John L. Baker and Nancy Baker, his wife, Appellants *v.* County of Allegheny, Appellee.

County of Allegheny, Appellant *v.* John L. Baker and Nancy Baker, his wife, Appellees.

Argued December 5, 1979, before Judges CRUM-LISH, JR., ROGERS and MACPHAIL, sitting as a panel of three.

*Leonard M. Mendelson,* of *Hollinshead and Mendelson,* for condemnees.

*Shelden L. Keyser,* Assistant County Solicitor, with him *Alexander J. Jaffurs,* County Solicitor, for condemnor.

OPINION BY JUDGE MACPHAIL, March 10, 1980:
John L. Baker and Nancy Baker, husband and wife (Appellants), were the owners in fee simple of

a tract of land in Allegheny County. Appellants occupied and used said property for a residence and for the operation of an art studio business and a farm on which they raised and kept cattle and horses and grew feed hay for their stock. The County of Allegheny (County) acquired Appellants' property for public purposes on February 5, 1971 for the sum of $108,000. On or about February 19, 1971, Appellants purchased a replacement property in Washington County for which they paid $100,000 in cash ($90,000 for realty and $10,000 for personalty). Shortly afterwards, Appellants moved onto said property to reside and carry on the same business operations as formerly conducted on their old property.

This is an appeal by Appellants from an order of the Common Pleas Court of Allegheny County dismissing exceptions filed by both parties to a non-jury verdict in favor of Appellants in the sum of $20,000 for business location damages[1] to two businesses and $2,100 for search expense.[2]

Our scope of review in a condemnation case is limited to a determination of "whether the lower court abused its discretion, whether an error of law was committed, or whether the findings and conclusions are supported by sufficient evidence." *Commerce Land Corporation v. Department of Transportation,* 34 Pa. Commonwealth Ct. 356, 383 A.2d 1289 (1978). "It is fundamental that the findings of fact of the lower court will not be disturbed if they are based upon substantial evidence." *Greger v. Canton Township,* 41 Pa. Commonwealth Ct. 20, 24, 399 A.2d 138, 140 (1979).

---

[1] Section 601A(b)(3) of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-601A(b)(3).

[2] Section 601A(b)(4) of the Code, 26 P.S. §1-601A(b)(4).

First, the Appellants contend that they are entitled to the benefit of three, rather than two, separate dislocation claims under Section 601A(b)(3) of the Code. The trial court has found that the Appellants operated two businesses on their property; one consisted of the selling of art work and the designing of sculptures conducted in a studio, and the other consisted of a combination horse ranch, tack selling, cattle raising and hay growing operation. The trial court held that under Section 601A(b)(3) of the Code, Appellants were entitled to the maximum amount of damages of $10,000 for each of those two businesses because they were both relocated with a substantial loss of existing patronage.

Appellants appeal to us that the raising, selling, and renting of riding horses and the selling of tack constitute one business and that the growing of hay and the raising of a dozen or so cattle comprise a separate farm business for which separate dislocation damages of $10,000 should have been awarded. We affirm the trial court's finding that Appellants' farm operation is merely a component of the horse business and that it is not, therefore, entitled to a separate consideration for the award of dislocation damages. This finding by the trial court is based on substantial evidence. The Attorney General's Rules and Regulations at 37 Pa. Code §151.4(4)(ii) used to determine whether two or more legal entities constitute only one business provide us with key factors as follows:

(A) The extent to which the same premises and equipment are shared.

(B) The extent to which substantially identical or intimately interrelated business functions are pursued and business and financial affairs are commingled.

(C) The extent to which the entities are held out to the public, and to those customarily dealing with such entities, as one business.

(D) The extent to which the same person or closely related persons own, control, or manage the affairs of the entities.

Applying the facts of our case to those rules, we are constrained to find that the Appellants' horse business and their hay growing and cattle operation were integrated in several important aspects. The Appellants owned, controlled,. and managed both businesses. The same farm land was shared by the horses and cattle. Although Appellants kept their own records of the horse business separate from those of the farm operation, they reported the income from both operations as a combined income on their federal income tax return under Schedule F. The income and expenses of both business activities were credited and debited to the same account.

Additionally, Appellants appeared to hold out to the public only one business—that of the horses. They grew hay to feed their own horses and raised a few cattle mostly for their own use. The farm operations appear to have been dependent on the horse business for their existence; they were an interrelated segment of such business. The lower court correctly disallowed Appellants dislocation damages for a third business entity.

Appellants' second contention is that the lower court should have granted them a $4,000 supplement for the down payment on a replacement dwelling under Section 603A(a)(2) of the Code, 26 P.S. §1-603A(a)(2). The Appellants argued that they are entitled to this supplement, notwithstanding the fact that they had adequate funds from the acquisition price of the condemned property with which they

purchased the replacement property. They cite *County of Allegheny v. Gray,* 37 Pa. Commonwealth Ct. 154, 389 A.2d 1211 (1978), in support of their contention.

*Gray,* however, is distinguishable on the facts from the case before us. In *Gray,* the condemnee was an older, single woman without resources and with no conceivable financing available to her. She needed the supplement to make the down payment on a replacement dwelling. This accomplishes what we perceive to be the legislative purpose of Section 603A (a)(2), that is, to provide ready access of funds for condemnees who must borrow money to acquire replacement real estate. No similar need has been demonstrated in the instant case. Our Constitution[3] provides for "just compensation," no more and no less. We hold that to award Section 603A(a)(2) damages in the instant case would go beyond the constitutional mandate. We note that Section 151.8 of the Attorney General's Rules and Regulations—"Time and Conditions of Payment," 37 Pa. Code §151.8, supports our view in this respect. It is stated therein that payment under Section 603A of the Code, "will be made jointly to the displaced person and a lending institution, title company, the seller, or similar party in order to assure that the funds are *available* and used exclusively for settlement of the replacement dwelling." (Emphasis added.) Thus, the supplement is intended to be used only in making the down payment on a replacement dwelling. If the individual does not need it and uses it for other purposes, the intent of the provision is thwarted. We hold that the trial court properly denied Appellants the down payment supplement. As to Appellants, then, the order of the trial court must be affirmed.

---

[3] Pa. Const. art. I, §10.

The County has filed a cross-appeal on two findings of the trial court. The County argues that Appellants are not entitled to dislocation damages under Section 601A(b)(3) of the Code for either of the two businesses (nor for the farm operation, should it be considered a third entity). Such damages should be denied, the County argues, because neither business suffered a substantial loss of existing patronage when viewed in light of its respective profits for the relevant years.

The comparison of net receipts has often been used to determine whether or not business dislocation damages are appropriate. *Eisenberg v. Redevelopment Authority of the City of Bethlehem,* 35 Pa. Commonwealth Ct. 193, 386 A.2d 163 (1978) and *Appeal of Brennan,* 30 Pa. Commonwealth Ct. 58, 372 A.2d 1240 (1977). There is ample evidence in the record of the fact that Appellants' net earnings from the art and horse businesses declined considerably in the year following the acquisition by the County. Therefore, we affirm the trial court's finding that Appellants' businesses could not have been relocated without substantial loss of existing patronage.

The County also contends that Appellants were not entitled to $2,100 for expenses incurred in searching for a replacement business or farm under Section 601A(b)(4) of the Code, 26 P.S. §1-601A(b)(4). The County argues that the trial court should have denied Appellants such damages because their claims for mileage traveled and time spent in search were unsupported by receipts or records as required by Section 151.4(7)(ii) of the Attorney General's Rules and Regulations, 37 Pa. Code §151.4(7)(ii). It is true that those regulations do provide that expenses claimed by condemnees for search purposes must be supported by receipted bills. It is obvious, however, that that section applies to those types of expenses

for which documentation would act as proof certain for those expenses. Gasoline receipts here would not necessarily verify Appellants' claims. In the opinion of the trial court, the Appellants justified their traveling expenses by producing a list of places visited by them, the distances traveled, and the dates of their visits. It is our opinion that the court properly based its findings on such evidence because of its competence. "It is not for this Court to determine whether or not we would have reached the same conclusions but rather whether or not the record contains sufficient competent evidence to support the conclusions of the court below." *Riehl v. Millcreek Township Sewer Authority*, 26 Pa. Commonwealth Ct. 70, 72, 362 A.2d 478, 479 (1976).

The record also contains sufficient evidence to support the finding that Appellants lost $1,500 in income while searching for the replacement business. Although Section 151.4(7)(ii) of the Attorney General's Rules and Regulations, 37 Pa. Code §151.4 (7)(ii), also provides that "[p]ayment for time actually spent in search shall be based on the applicable hourly wage rate for the person(s) conducting the search, but may not exceed $10 per hour," an hourly rate obviously is not applicable to Appellants' business.[4] Therefore, the trial court properly based its findings on the evidence of the value of Appellants' work in this respect.

For the foregoing reasons, the order of the Court of Common Pleas of Allegheny County will be affirmed.

---

[4] Appellants testified that although their time was worth $10.00 an hour, they submitted their time expense to the Court at $50.00 per day for 30 days, making a total of $1500.00. For an eight hour day the hourly rate would be well under the $10.00 limit fixed by Attorney General's Rules and Regulations.

## ORDER

AND Now, this 10th day of March, 1980, the order of the Court of Common Pleas of Allegheny County, dated September 8, 1978, entering judgment on the verdict in favor of John L. and Nancy Baker in the sum of $22,100 is affirmed.

President Judge BOWMAN did not participate in the decision in this case.

Judge DISALLE did not participate in the decision in this case.

---

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent. I would reverse the judgment entered in the court below to the extent that it fails to award the appellant-landowners the limited down payment on the purchase of their replacement property provided by Section 603A(a)(2) of the Code. I find nothing in the Code which authorizes the acquiring agency to withhold the down payment in the event it decides that the displaced persons do not need the money. With respect, I cannot agree that the Attorney General's Rules and Regulations quoted by the majority suggest that the displaced person's need is a proper subject for consideration. I also disagree with the majority's view of the facts of the case of *County of Allegheny v. Gray,* 37 Pa. Commonwealth Ct. 154, 389 A.2d 1211 (1978). Rather than being without funds, Mrs. Gray had, in fact, $22,900 in a savings account. The same argument was made by the acquiring authority in that case as Allegheny County makes here. Finally, I do not believe that in providing for an award not exceeding $4000 the General Assembly intended to impose on the parties, the courts and juries the difficult duty of determining which displaced persons are so poor that they should have the down payment and which are so rich that it should be denied them.