556 A.2d 527

In Re: The Matter of Condemnation of Real Property of Naaman E. King by The Octorara Area School District. Octorara Area School District, Appellant.

Argued March 9, 1989, before Judges BARRY and PALLADINO, and Senior Judge NARICK, sitting as a panel of three.

*Alan J. Jarvis,* for appellant.

*James H. Thomas, Blakinger, Byler, Thomas & Chillas, P.C.,* for appellee.

OPINION BY JUDGE PALLADINO, March 29, 1989:

Octorara Area School District (Appellant) appeals from a decision of the Court of Common Pleas of Chester County sustaining the preliminary objections of Naaman E. King to Appellant's declaration of taking.

Eight municipalities are included within the area served by Appellant, six in Chester County and two in Lancaster County. All of Appellant's schools are located on a 53 acre campus and include an elementary school, an intermediate school and a high school. Appellant's administrative offices are also located at this site. The campus is surrounded by four operating farms.

At public meetings in November and December of 1986, Appellant's Board of Directors and the public were

informed of a severe shortage of athletic facilities and the need to acquire additional land for that purpose. N.T. at 34-36, 54. Subsequently, it was discovered that a 189 unit housing development was being planned in the Borough of Parkesburg, one of the communities served by Appellant. Dr. Richard P. McAdams, Appellant's superintendent, projected that this development would result in the need for a new elementary school and in February 1987, he informed the Board that 30 acres would probably be needed for an elementary school and the already known to be needed athletic fields. N.T. at 39-40.

In February or March 1987, the Board authorized a bond issue to cover renovations and additions to the current schools and set aside some monies from the issue for possible land acquisition. N.T. at 40-41. McAdams was instructed to ask the owners of the four farms if they would be interested in selling land to Appellant. McAdams testified that none of the four were interested in selling any land. N.T. at 44. In April 1987, the Board directed its solicitor to report to it on condemnation procedures and instructed McAdams to have the four farms bordering the campus appraised. After obtaining this information, the Board, while not making a final decision on what land to condemn nor how much to condemn, ordered a second appraisal of Naaman King's farm based on acquisition of 50 acres and 100 acres. N.T. at 67. The appraisals were completed in September 1987.

The Board then met in executive session to determine how much land to acquire. At that meeting, McAdams provided them with projected school populations for all grades through the year 1998. These projections were based in large part on McAdams' assumption that the major difference over the past was the housing development in Parkesburg. N.T. at 83-84. Based on these projections, McAdams felt that an additional 500 student

elementary school would be needed by 1990-1991, an additional middle school for 600-700 students by 1995-1996, and an additional high school for 700 students by 2000. N.T. at 99-100. According to the optimal acreage figures for schools contained in 22 Pa. Code §349.7,[1] the maximum amount of acreage for these three schools, for which Appellant could receive reimbursement from the Commonwealth,[2] was 119 acres.

At the executive meeting, the Board authorized its solicitor to negotiate with Naaman King for the purchase of his entire farm—102 acres. A purchase offer was made to Naaman King; no response to the offer was received. The Board, at a public hearing held on November 16, 1987, authorized the condemnation of Naaman King's farm.

A declaration of taking was filed with the Prothonotary of Chester County on November 19, 1987. The purpose of the condemnation was described in the declaration as being "to acquire land for future expansion of educational facilities including athletic fields and probable construction of new schools." Notice of the condemnation and a copy of the declaration were served on Naaman King on December 11, 1987. Naaman King filed preliminary objections to the declaration on January 8, 1988.

---

[1] Section 349.7 provides that maximum approvable acreage is 10 acres for elementary schools, 20 acres for intermediate schools and 35 acres for high schools. One additional acre may be added for each 100 projected students.

[2] Section 2574.1 of the Public School Code of 1949 (Public School Code), Act of March 10, 1949, P.L. 30, 24 P.S. §25-2574.1 provides for reimbursement to school districts for the cost of acquiring "a site for a school building in advance of its need and in accordance with a long range master plan for school building construction approved by the Department of Education."

The trial court sustained the preliminary objections, concluding that Appellant had abused its discretion in condemning Naaman King's entire farm because "the taking in question is excessive in light of Condemnor's [Appellant] reasonable necessity for the property and the policy of the Commonwealth and Chester County to preserve and protect agricultural land. . . ." *In Re: Condemnation of Real Property of Naaman E. King* (No. 87-08783, filed June 13, 1988), slip op. at 8. In a supplemental opinion, filed August 25, 1988 in response to the appeal to this court, the trial court clarified its decision. The trial court held that no necessity for future use of the condemned land within a reasonable time had been shown. On appeal to this court, Appellant contends that the trial court erred in concluding that Appellant had abused its discretion in condemning Naaman King's entire farm.

Our scope of review in eminent domain cases is limited to a determination of whether the trial court abused its discretion, an error of law was committed, or the findings and conclusions are supported by sufficient evidence. *Baker v. County of Allegheny,* 49 Pa. Commonwealth Ct. 640, 412 A.2d 190 (1980). The trial court is limited in its review of a decision to condemn property and of the extent of the taking to determining whether the condemnor is guilty of fraud, bad faith or has committed an abuse of discretion. *See Pidstawski v. South Whitehall Township,* 33 Pa. Commonwealth Ct. 162, 380 A.2d 1322 (1977). The burden of proving the condemnor has abused its discretion is on the objector. *Id.*

Appellant contends that the trial court, in reaching its decision, improperly substituted its discretion for that of the Board. For the reasons which follow, we conclude that the trial court correctly determined that the extent of the taking in this case was excessive and properly sustained Naaman King's preliminary objections.

The legislature has provided school district boards of directors with power to acquire, by condemnation, real estate it "may deem necessary to furnish school buildings or other suitable sites for proper school purposes. . . ." Section 703 of the Public School Code,[3] 24 P.S. §7-703. A school district board of directors may have the right to acquire land by condemnation for future expansion, and the avoidance of excessive costs and waste of public funds if acquisition is delayed is a permissible motive for doing so. *Pittsburgh School District Condemnation Case*, 430 Pa. 566, 244 A.2d 42 (1968). However, "acquisition for a future necessity is permissible only to the extent that such land may become necessary in good faith for future use within a reasonable time." *Truitt v. Borough of Ambridge Water Authority*, 389 Pa. 429, 133 A.2d 797 (1957).

It is clear from the record in this case that the only immediate need of Appellant for land for proper school purposes was for athletic facilities. The maximum amount felt necessary for this purpose was 15 acres. The bulk of the land condemned by the Board, as indicated in its declaration of taking, was for the purpose of "probable construction of new schools." This is clearly a future necessity and is permissible only if the need for the land will become necessary within a reasonable time.

The reasons given by the Board for condemning all 102 acres of Naaman King's farm can be summarized as: (1) keeping its schools on one campus, (2) monetary savings by obtaining land for future expansion now, and (3) the school enrollment projections of McAdams, based on the "sudden submission of subdivision plans for residential development within the District, particularly in Parkesburg Borough." Appellant's brief at 11-12. The

---

[3] *See supra* note 2 for full cite.

dispute in this cases focuses on reason number three—the enrollment projections.

McAdams testified extensively as to how he arrived at his projections of the number of children who would be attending Appellant's schools for the years 1988 through 1998. N.T. at 82-87. In explaining the drastically increased figures for this ten year period over the 1978-1988 period,[4] McAdams testified as follows:

> [M]y assumption here is that the only major difference over the next five years is going to be housing development in Parkesburg and that all of the rest of the District will have their six to eight or ten houses a year. Parkesburg for the last several years has had no growth because they had a moratorium of sewer permits, which they have now lifted. . . . I'm saying we are going to have 50 more houses out of Parkesburg [per year] and everything else is the same. So my assumption in these enrollment projections is everything is the same except I have to plug in 50 new houses. How many kids is that? . . . If there are 50 new houses

---

[4] Naaman King Exhibit A shows the projections for 1983-1988 to have been:

| Year | Enrollment |
|------|-----------|
| 1983-84 | 2370 |
| 1984-85 | 2375 |
| 1985-86 | 2392 |
| 1986-87 | 2423 |
| 1987-88 | 2454 |

McAdams Exhibit 3 shows the projections for 1988-1998 to be:

| Year | Enrollment | Year | Enrollment |
|------|-----------|------|-----------|
| 1987-88 | 2425 | 1992-93 | 2893 |
| 1988-89 | 2540 | 1993-94 | 3074 |
| 1989-90 | 2618 | 1994-95 | 3242 |
| 1990-91 | 2708 | 1995-96 | 3368 |
| 1991-92 | 2807 | 1996-97 | 3513 |
| 1997-98 | 3626 | | |

> those 50 houses will give us 50 public school kids.
> . . . Then I said, okay, by 1992 . . . we'll have 100
> more houses a year than we have now. That's pure
> projection.

N.T. at 83-85. Appellant submitted as evidence of the increase in housing development in Parkesburg Borough a March 15, 1988 letter from the Parkesburg Borough Council President. Appellant's exhibit 2. This letter stated that Borough Council had approved and pending subdivision applications for 288 single family residences. The majority of the residences were in a proposed 189 unit development, Parkesburg Knoll, for which approval of 89 units had been given.

Naaman King disputed McAdams' enrollment projections. He offered as evidence an affidavit from the Parkesburg Borough Secretary that Parkesburg Knoll was in its first stage of 48 planned homes, that only 2 units were finished and that the second stage had not been planned or scheduled as of February 29, 1988. During examination of McAdams on February 2, 1988, Naaman King's counsel elicited the following testimony:

> Q. So are you saying that . . . you're comfortable with your projections up to 1993?
>
> A. I'm comfortable with the whole thing but I'm saying I have a degree of certainty for the next five years that is higher than the following five. I went public with this. This is what I think is going to happen. I don't know if it's going to happen or not, obviously.

N.T. at 86.

Two Pennsylvania Supreme Court cases dealing with the argument that the extent of a taking by a school district for future use was an abuse of discretion are relevant here. In *Winger v. Aires*, 371 Pa. 242, 89 A.2d 521 (1952), the Supreme Court held that the School

Board of Ephrata had abused its discretion in condemning the 55 acre Winger Farm in 1950 when a school census showed a need for an additional 3 school rooms for the 1952-53 term and 3 more for the 1953-54 term. Evidence was produced which showed this amount to be far in excess of what was, at that time, needed or recommended for the increase in students. In *Pittsburgh School Condemnation Case,* the Supreme Court held that the objectors to a condemnation of land for future use had failed to meet their burden of proving abuse of discretion because they failed to come forward with any evidence on that factual issue.

In the instant case, we have evidence on the issue of whether there existed a necessity for future use of the land condemned within a reasonable time. The trial court resolved this factual evidence in favor of Naaman King in determining that the Board abused its discretion in condemning Naaman King's entire 102 acre farm. In reviewing the record in this case to determine if the trial court abused its discretion in concluding that the school district did not have a necessity for the condemned land within a reasonable time, we are guided by the words of the Pennsylvania Supreme Court: " 'The exercise of the right of eminent domain, whether directly by the state or its authorized grantee, is necessarily in derogation of private right, and the rule in that case is, that the authority is to be strictly construed.' " *Winger* at 247, 89 A.2d at 521, 523 (quoting *Lance's Appeal,* 55 Pa. 16, 25 (1867)).

We have no doubt that the Board relied in good faith on McAdams' enrollment projections. Nor do we doubt that McAdams' projections were based on the best available information. However, as McAdams' own testimony demonstrates, the enrollment projections are based on assumptions and possibilities. Even McAdams expressed doubt as to his projections after the year 1992. The

enrollment projections are based in a large part on an assumption that 1.06 children will be living in each house that might be built in the pending and approved subdivisions in Parkesburg Borough.

Clearly a school district must engage in long range projections, as were done here, to prepare for future needs. The purchase of land for such projected needs to avoid higher costs in the future and to be sure there is sufficient land is proper and commendable. The necessity for purposes of supporting a condemnation, though, requires more to support it than enrollment projections based on possible housing development. Condemnation of an entire working farm for school buildings projected to be needed over the next 5 to 12 years, where the probable need is based on assumptions and possibilities that have been challenged by contrary evidence, is beyond the eminent domain power vested in the Board by the Public School Code and constitutes an abuse of discretion.

Accordingly, we affirm.

### ORDER

AND NOW, March 29, 1989, the order of the Court of Common Pleas of Chester County in the above-captioned case is affirmed.