557 A.2d 819

Downingtown Area School District, Appellant *v.* Wayne DiFrancesco et al., Appellees.

Argued March 9, 1989, before Judges BARRY and PALLADINO (P.), and Senior Judge NARICK, sitting as a panel of three.

*Guy Donatelli*, with him, *Theodore O. Rogers*, and *James E. McErlane, Lamb, Windle & McErlane, P.C.*, for appellant.

*Robert W. Lentz*, with him, *Robert C.F. Willson, Lentz, Cantor, Kilgore & Massey, Ltd.*, for appellees.

OPINION BY JUDGE PALLADINO, April 20, 1989:

Downingtown Area School District (District) appeals from a decision of the Court of Common Pleas of Chester County sustaining the preliminary objections of Wayne R. DiFrancesco to a declaration of taking by the District. We reverse.

It is not disputed that the District needed to construct a 600 pupil elementary school in West Bradford Township, one of the municipalities serviced by the District. The District's Board of Directors (Board) hired an architectural and planning firm, Vaughn Organization, P.C., to investigate a possible 20 acre site for the school. Vaughn submitted a report containing 11 possible sites to the Board in March 1988. The sites were listed numerically according to their score on 8 criteria (present and future environment; integration with community planning; role in comprehensive building planning; size of site; accessibility; site characteristics; utility services; cost). Exhibit D-5. A parcel owned by Cozzone and one owned by Wood were, respectively, one and two on the list.

After presenting its report to the Board and recommending the Cozzone parcel, Vaughn began preliminary submissions to the Departments of Education, Transportation and Environmental Protection to have the Cozzone site approved for the school. N.T. at 65-66. Meanwhile, the Board informed Jack M. Hines, Jr., West Bradford Township Manager, of its preliminary choice of the Cozzone property as the site for an elementary school and of the other sites on its list of possibilities. Hines discussed this information with the West Bradford Township Supervisors. N.T. at 13, Hines Deposition at 6.

In April 1988, Hines met with Dr. Ronald W. Gray, Superintendent of the District, James Watson, Board President, Robert Eldridge, Board member, Robert Steimer, District Maintenance Supervisor, and Jerome H. Taylor, Vaughn representative. Hines Deposition at 5-6. Hines informed them that the Township supervisors did not believe the Cozzone site should be condemned because (1) it was an operating farm, (2) it was on Glenside Road (considered dangerous by the Township), and (3) it was not in the areas slated for installation of public water and sewage. He suggested two tracts of land to the Board that (1) together would provide approximately 21 usable acres of land, (2) were in the area slated for public water and sewage, and (3) were already scheduled for development as opposed to being agricultural land or open space.[1] Hines Deposition at 13-15. The two tracts were the Boesler-Wagner tract and the DiFrancesco tract.[2]

---

[1] Another reason was that the Cozzone and Wood parcels under consideration were only portions of the tracts of land owned by those individuals, and, in the case of Cozzone, the parcel under consideration was in the middle of the 114 acre tract.

[2] The parties stipulated that the total acreage of the two tracts was 27.279 acres. N.T. at 123. The Boesler-Wagner tract is approximately twice the size of the DiFrancesco tract.

Based on the information received from Hines, the Board directed Vaughn to conduct an evaluation of the two-tract site, using the criteria Vaughn had used to evaluate the other sites. N.T. at 13-14. Vaughn verbally reported to the Board on May 11, 1988, informing the Board that the site suggested by Hines was as desirable as the Cozzone parcel. A written report was submitted to the Board by Vaughn on June 9, 1988. After Vaughn's verbal report on May 11, the Board authorized condemnation of the Boesler-Wagner and DiFrancesco tracts.

On June 10, 1988, the District filed a declaration of taking for the two tracts. DiFrancesco filed preliminary objections to the taking. After a hearing, the trial court concluded that the selection of the school site was arbitrary and "retroactively justified" and, therefore, constituted an abuse of discretion by the District. The trial court sustained DiFrancesco's preliminary objections. The District's appeal from that decision is now before us.

Our scope of review in an eminent domain case is limited to a determination of whether the trial court abused its discretion, an error of law was committed, or the findings and conclusions are supported by sufficient evidence. *Baker v. County of Allegheny,* 49 Pa. Commonwealth Ct. 640, 412 A.2d 190 (1980). The trial court is limited in its review of a decision to condemn property and of the extent of the taking to determining whether the condemnor is guilty of fraud, bad faith or has committed an abuse of discretion. *See Pidstawski v. South Whitehall Township,* 33 Pa. Commonwealth Ct. 162, 380 A.2d 1322 (1977). The burden of proving the condemnor has abused its discretion is on the objector. *Id.*

The District contends that the record does not support the trial court's conclusion that the District's selection of the school site was arbitrary and retroactively justified. The District also argues that the trial court

improperly engaged in a *de novo* evaluation of the propriety of the school site chosen.

The trial court concluded that the District's decision to condemn the DiFrancesco tract was arbitrary and constituted an abuse of discretion because (1) the District's choice for a school site was not "particularly appropriate" and (2) the choice was "retroactively justified." The trial court expressed uncertainty as to whether its conclusion that the District's choice for a school site was not particularly appropriate for a school site could alone legally support a conclusion that the District had abused its discretion. However, the trial court found that the District retroactively justified its arbitrary decision. The trial court concluded that this constituted an abuse of discretion because it showed the District's decision was not based on an inquiry into the facts necessary to form an intelligent decision. Because the trial court based its decision on its conclusion that the Board "retroactively justified" its decision, we will address that issue first.

The trial court's conclusion that the Board's decision was retroactively justified rests on its findings that: (1) the only written report submitted by Vaughn before the condemnation did not include the property condemned; (2) neither Vaughn nor anyone from the Board checked, prior to condemnation, to see if water and sewage were available to any of the sites under consideration; and (3) a numerical evaluation of the condemned property and a written report were not done until after the condemnation.[3] These findings, while supported by the record, do not support a conclusion that the Board retroactively justified its decision.

The record discloses, and DiFrancesco does not dispute, that Vaughn presented a verbal report to the Board

---

[3] *In Re: Condemnation of Land in West Bradford Township* (No. 88-04528, filed January 31, 1989), findings of fact nos. 17, 18, 22, 25.

during the May 11, 1988 meeting at which the decision was made to condemn. N.T. at 36, 37, 74-75, 77-79. The verbal report included an evaluation of the property that was condemned. It also included a comparison of the condemned property with the top three sites from the original report, even though it did not include the numerical comparison that appeared in the written report submitted on June 9, 1987. N.T. at 74-75, 77-79. While no one from the Board or Vaughn actually checked to see if water and sewage were available to the sites under consideration prior to the condemnation decision, neither the Board nor Vaughn acted without information on this subject. Hines, the Township manager, informed representatives of the Board and Vaughn of the status of the availability of water and sewage to the sites when he met with them in April, 1988 and provided them with the plans of the sewer and water services of the Township. Hines Deposition at 14-19. Clearly the Board had made an inquiry into the facts necessary for an informed decision *prior* to making a decision on which property to condemn.

Turning to the trial court's conclusion that the Board's choice of the school site was not "particularly appropriate," we note that, as the District argues, this determination appears to be based on the trial court's *de novo* evaluation of the propriety of the school site chosen by the Board. The trial court found that the school site selected by the District failed to meet four of the six key criteria, listed by Vaughn and adopted by the Board, for selecting a school site. However, it is not the function of the trial court in a condemnation case to second guess the condemnor.

A court has "no power to substitute [its] discretion for that of the [condemnor], nor to correct mistakes in judgment. It is presumed that the officials have performed their duties in good faith. ..." *Swartz v. Pittsburgh Public*

*Parking Authority,* 63 Pa. Commonwealth Ct. 434, 439, 439 A.2d 1254, 1256 (1981). Mere evidence that a decision is unwise will not warrant a conclusion that a condemnor has abused its discretion in its selection of a site. *Speicher Condemnation Appeal,* 58 Pa. Commonwealth Ct. 321, 428 A.2d 282 (1981).

Even assuming the trial court correctly found the school site selected did not meet the key criteria the Board had adopted, that fact does not make the Board's choice an abuse of discretion. The Board has the power to condemn property it "may deem necessary to furnish school buildings or other suitable sites for proper school purposes. ..." Section 703 of the Public School Code of 1949.[4] The Board is not required to follow any set criteria in choosing a school site. All that is required is that an investigation be conducted so that the decision to condemn is an informed judgment. *See Pittsburgh School District Condemnation Case,* 430 Pa. 566, 244 A.2d 42 (1968). Review of the record, as previously indicated, discloses that the Board did investigate and that its decision to condemn the DiFrancesco tract was an informed judgment.

DiFrancesco suggests that the District's condemnation decision was the result of improper influence asserted by the Township supervisors because the Board considered the Township's expressed desire that the Cozzone and Wood parcels not be condemned and because the Board eventually condemned the land recommended by the Township. The Board's consideration of the Township's opinion as to the location of the school site is not evidence of improper influence. In fact, section 305 of the Pennsylvania Municipalities Planning Code[5] requires that once a municipality has adopted a comprehen-

---

[4] Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §7-703.
[5] Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10305.

sive plan, or even part of one, a school district must submit any proposed action with respect "to the *location*, demolition, removal, sale or lease of any school district structure or land" to the municipal planning agency for recommendations "*prior* to the execution of such proposed action." (Emphasis added.) Clearly if a school district is required to solicit recommendations from a municipal planning agency, it is not improper for a school district to take the recommendations of a township's supervisors under consideration in choosing a school site, even if this results in the school district placing less emphasis on the criteria it had picked to guide its school site selection.

The trial court's determination that the District's selection of the school site was arbitrary and retroactively justified is not supported by the record. Nor does the record support a conclusion that the District abused its discretion. Accordingly, we reverse.

### ORDER

AND NOW, April 20, 1989, the order of the Court of Common Pleas of Chester County in the above-captioned matter is reversed.