**In re Condemnation by the
Manheim Township School District**

*George T. Brubaker, Robert M. Frankhouser Jr.* and *Kevin M. French,* for condemnor Manheim Township School District.

*James H. Thomas,* for condemnee Ulrich.

PEREZOUS, *J.,* September 26, 2005—This matter is before the court on preliminary objections filed by the condemnee, Robert G. Ulrich, against the declaration of taking filed by the condemnor, Manheim Township School District. Specifically, the condemnee contends that the school district cannot exercise the power of eminent domain in this case because: (1) the school district has not provided sufficient justification for the taking and, thus, has not established legal "necessity"; and (2) the conversion of the property to a "non-agricultural use" conflicts with state policy. The condemnor, however,

contends that there is no conflict with state policy, and that the condemnee has failed to show that the school district abused its discretion or acted in bad faith in condemning a portion of the condemnee's property. For the following reasons, this court overrules the preliminary objections.

This case arises from the planned renovation of Manheim Township School District's Neffsville Campus. The campus includes a middle school, high school and an elementary school. It also includes athletic fields that support educational and extracurricular programs. As the campus expanded over the years, a "myriad of twists, turns and roadways" were put in place to accommodate internal traffic circulation. Presently, there are four points of ingress and egress on the campus. On the north side, there is a two-way access off of Oregon Road. A second two-way access is located off of Route 501 on the west side of the campus. On the south side, there is a one-way entrance off of Valley Road with residential and commercial properties on each side. Farther to the west on Valley Road is a one-way exit that is directly adjacent to the elementary school. Another entrance off of Valley Road goes directly to the bus facilities. Via these routes, it is possible for a vehicle to go from one point of entry to any other point of access.

In 2001, the school district examined the efficiency and safety concerns exacerbated by the existing roadways and traffic conditions in connection with its plans to renovate the campus. Previous actions taken by the school district to address these concerns included placing speed bumps at various locations on the school roadways, modifying the traffic flow based upon the timing

of students and others entering and leaving the campus, and limiting the traffic on the roadway next to the elementary school to one-way exiting traffic. As part of the renovation of the campus, the school district asked ELA Group, the civil engineers on the project, to review the current traffic conditions and propose alternatives for consideration by the school district.

This review identified a number of problems created by the present configuration of the roadways on and around the Neffsville Campus. The present traffic conditions at the campus, in terms of safety and proper traffic flow, were said to be unsafe and inefficient. In order to address these concerns, ELA Group considered two groups of alternatives: (1) maintaining the current access points in their present locations and making improvements at those locations; and (2) three options for changing the access on Valley Road. In reviewing the alternatives, ELA Group considered existing traffic conditions, safety and efficiency, the nature of the improvements that would need to be made, the school district's proposed land development plan, the impact on adjoining properties, the potential for the loss of houses and businesses and the costs to the school district.

Regarding the first alternative, testimony at the evidentiary hearing revealed that improving the existing access points off of Valley Road would not correct the problems created by the existing roadways. Assuming the existing entrance off of Valley Road was improved, the resolution of unsafe conditions, such as the congestion and 90-degree turns, would require relocation of the stadium and tennis courts. Moreover, the entrance and exit would remain very close to the elementary school

and would still go through the bus maintenance facility. In the school district's opinion, this alternative was not acceptable because it would not resolve the safety concerns or remedy the traffic flow issues on the campus itself. With respect to this alternative, ELA Group concluded:

"The separation of bus traffic and other vehicular traffic should be a goal of the school district to promote safety and orderly traffic flow. The first alternative considered does not address this separation. The first alternative results in greater cost ($1,350,000) to the school district and impacts more homes, and may require the taking of four properties, further increasing the overall cost." Summary of findings, school district exhibit no. 7 at p. 4.

Under the second alternative, ELA Group considered potential locations for a new access off of Valley Road. In making its determination, the ELA Group examined the safety implications of each design, the traffic flow, the levels of service at each intersection, the cost and impact on surrounding neighborhood properties of any improvements that would need to be made at each intersection and the number of homes that would need to be acquired. The ELA Group concluded that the most feasible location for a new access was the Ulrich tract because it is an open field, provides direct access to the high school, as opposed to the circuitous route required by the present road configuration, and is located east of the stadium and tennis courts. No demolition would have to take place, and no wetlands or streams would be crossed. With respect to this alternative, the ELA Group concluded:

"The second alternative . . . ensures separation of bus traffic from other vehicular traffic and should be significantly less to construct the required improvements ($800,000). Fewer properties are impacted than in the first alternative and may require only two properties to be purchased.

"It is our opinion that the second alternative is the best alternative for the school district. Within the second alternative, option 2B [referring to the Ulrich tract] is likely to be the best option, since it impacts the fewest properties and only requires the purchase of one property or the purchase of a right-of-way across the property." *Id.*

Expert testimony at the evidentiary hearing revealed that the best and most feasible option for the school district was relocation of the access way. The expert testified:

"In my opinion, for safety purposes and safety alone, the access drives that are currently being used must be remedied.

"My opinion is the only way to remedy those and make that access off of Valley Road safer is the relocation of that access drive.

"Again, we're talking safety of elementary school students. We're talking safety of high school students that have to drive through the maintenance operation, bus maintenance operation, to get to and from or actually from Valley Road into the school district or the school parking.

"We've got several [90] degree turns that we're dealing with. We've got a pinch point that is going to be very difficult to widen.

"For all of those reasons, I believe that the proposed access would be a much safer and a much more efficient access to the school property." N.T. 6/24/2005 at p. 68.

Information relied upon by the school district also showed that access from the Ulrich tract was shown to have the least impact on the surrounding neighborhood and provide the safest internal circulation to the site.

Based upon its review of the options presented by the ELA Group, the school board initiated discussions with the condemnee in April 2003 in order to acquire a portion of his property. When these discussions proved to be uneventful, the school board passed a resolution authorizing the condemnation of a portion of his land in March 2004. The condemnee owns six plus acres of land at the eastern end of the campus. The land is zoned R-3, and is not located in an agricultural zone. Other than a fence, there is no structure on the portion of the tract condemned by the school district. Slightly more than three acres of the land was condemned in the present case.

The school district filed the declaration of taking in the Court of Common Pleas of Lancaster County on March 19, 2004. The condemnee responded by filing preliminary objections on May 5, 2004. The condemnor filed an answer to the objections on December 21, 2004. An evidentiary hearing was held in this matter on June 24, 2005, before this court. On July 19, 2005, this court, along with counsel for the parties involved in this case, conducted a view of the Neffsville Campus and the Ulrich property. Subsequently, the parties filed their respective argument briefs in the matter.

In reviewing a decision to condemn property and of the extent of the taking, a trial court is limited in its review "to determining whether the condemnor is guilty of fraud, bad faith or has committed an abuse of discretion." *Downingtown Area School District v. DiFrancesco,* 125 Pa. Commw. 264, 267, 557 A.2d 819, 820 (1989). In addition, "[t]he burden of proving the condemnor has abused its discretion is on the objector[,]" *id.* at 267, 557 A.2d at 820-21, and this burden is extremely high. *Spory Appeal,* 54 Pa. Commw. 17, 21, 419 A.2d 804, 805 (1980). When property is selected to be acquired, "a court has no power to substitute its discretion for that of the condemnor, nor to correct mistakes in judgment." 6 Summ. Pa. Jur. 2d Property §11:32; *Downingtown,* 125 Pa. Commw. at 269, 557 A.2d at 821. Officials who make the decision upon whether or not to condemn certain property are entitled to a presumption that they have acted in good faith. *Id.* "Mere evidence that a decision is unwise will not warrant a conclusion that a condemnor has abused its discretion in its selection of a site." *Id.* at 270, 557 A.2d at 822.

Under the Public School Code of 1949, the school district has the authority to condemn land for proper school purposes. 24 P.S. §7-703. Proper school purposes include acquiring sites for the construction of school buildings and enlarging the grounds of any school property held by the school district. *Id.* The statute specifically states, in pertinent part, that: "the Board of School Directors of each district is hereby vested with the necessary power and authority to acquire, in the name of the district, by . . . condemnation . . . any and all schools and real estate, either vacant or occupied . . . as the Board of School

Directors may deem necessary to furnish school buildings or other suitable sites for proper school purposes for said district." *Id.*

In making its decision to condemn real estate which it deems necessary to acquire for proper school purposes, a school board "is not required to follow any set criteria in choosing a . . . site. All that is required is that an investigation be conducted so that the decision to condemn is an informed judgment." *Downingtown,* 125 Pa. Commw. at 270, 557 A.2d at 822.

In the present case, the condemnee failed to meet his burden of proving that the school district acted in bad faith or abused its discretion. A review of the record demonstrates that the school district's decision to condemn the property was based upon an informed judgment, made after a review of the recommendations submitted by the transportation experts, who extensively studied the issues concerning the school district and considered various alternatives to address those concerns. The fact that other alternatives were available in order to provide safer and more efficient access to the campus in connection with the expansion and/or renovation of the Neffsville Campus is of no consequence to this court. As previously stated, "[a] court has 'no power to substitute [its] discretion for that of the [condemnor] . . . .' " *Id.* at 269, 557 A.2d at 821.

"Whether the premises condemned were needed for school purposes [is] within the sound discretion of the condemnor." *Philadelphia School District Condemnation Case,* 47 D.&C.2d 454, 456 (1969). As the statute reads, school districts have the power to condemn any real estate that "the Board of School Directors may deem

necessary to furnish . . . suitable sites for proper school purposes." 24 P.S. §7-703. Thus, the question of necessity is not one for a court to decide, but one which is within the sound discretion of the authorities. *Lutz v. Allegheny County,* 302 Pa. 488, 493, 153 A. 903, 904 (1930).

As stated in the declaration of taking, "the condemnation . . . is for the public school purpose of acquiring real estate in connection with the expansion and/or renovation of the Manheim Township High School." This court has not seen any evidence of bad faith or an abuse of discretion on behalf of the school district in its decision to condemn the property at issue. The property was condemned after a thorough investigation and consideration of alternatives provided by ELA Group. Moreover, the school district felt the need to address the safety and efficiency issues created by the existing roadway configuration, and dealt with those needs in an appropriate fashion. In light of these facts, the condemnee has not met his burden of proving that the school district acted in bad faith or abused its discretion in condemning a portion of his property.

Furthermore, the taking does not contravene the policy of the Commonwealth based upon the Governor's Executive Order 2003-2. The executive order only applies if Commonwealth funds and Commonwealth-administered federal funds are used to encourage the conversion of "prime agricultural land" to other uses when alternatives are available. In the present case, however, the parties have stipulated that no Commonwealth funds or Commonwealth-administered federal funds are being used by the school district to acquire the land at issue.

Therefore, the policy contained within the executive order does not apply in the present case.

Accordingly, the court enters the following:

## ORDER

And now, September 26, 2005, upon consideration of the preliminary objections filed by the condemnee, Robert G. Ulrich, against the declaration of taking filed by the condemnor, Manheim Township School District, together with the briefs and supporting papers filed by the parties, as well as the evidence adduced, it is hereby ordered that the preliminary objections are overruled.