NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2461
_____

EMMETT J. MANN,
                                             Appellant
v.

JOHN S. BRENNER; DAVE REDSHAW;
DON HOYT; ROBERT A. KINSLEY;
MATT JACKSON; CITY OF YORK;
YORK COLLEGE;
REDEVELOPMENT AUTHORITY OF THE CITY OF YORK;
STEVEN R. BUFFINGTON; OFFICER WENTZ

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 06-cv-1715)
District Judge:  Honorable Yvette Kane

_____

Submitted Under Third Circuit LAR 34.1(a)
March 23, 2010

Before:   RENDELL, FUENTES and JORDAN, *Circuit Judges*.

(Filed: March 30, 2010)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Emmett Mann appeals the District Court's order granting the motions to dismiss of defendants City of York (the "City"), its agents, and York College.[1] He also appeals the District Court's decision to stay discovery pending disposition of the motions to dismiss. We have jurisdiction under 28 U.S.C. § 1291 and will affirm.[2]

I. **Background**

Mann owned a house in York, Pennsylvania, which he rented to college students. In 2004 and 2005, York College sought to acquire property for additional student housing and thus approached Mann about selling his house. However, the parties could not agree on a sales price. At some later time, Mann's home was cited for code violations and declared "blighted" by the City.

The City initiated condemnation proceedings against Mann in the Court of Common Pleas of York County. Although Mann stipulated to the blight determination, he argued that the City and York College had conspired to harass and intimidate him into selling his property for a reduced value. Mann accused the defendants of manipulating building codes and ordinance violations to bring improper charges against him, intentionally damaging his property, and lodging other unspecified false criminal charges

---

[1] The City defendants include John S. Brenner (Mayor), Don Hoyt, Matt Jackson, Dave Redshaw, Steven R. Buffington, Officer Wentz, and the Redevelopment Authority of the City of York. The York College defendants include York College and Robert A. Kinsley, a private contractor.

[2] The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

against him. The Court of Common Pleas issued an opinion on October 6, 2006, in which it found the taking to be proper. It also concluded that the City had not acted in bad faith or committed fraud in pursuing condemnation proceedings against Mann. The condemnation concluded in May 2007, when Mann was paid $166,000 for his property.

Meanwhile, on August 31, 2006, Mann filed a complaint in the United States District Court for the Middle District of Pennsylvania, pursuant to 42 U.S.C. § 1983, in which he alleged that the defendants conspired to intimidate and harass him into accepting a significantly reduced price for his property. As Mann asserts, "[t]heir plan, plainly put, was to drive [me] crazy." (App. 34.) The defendants filed motions to dismiss Mann's complaint, which the District Court granted, giving Mann leave to replead. The District Court instructed Mann on how to cure the deficiencies in his original complaint, and he subsequently filed two amended complaints. Mann's third version of the complaint, which was dismissed on the defendants' motions, is the subject of this appeal.

Mann's appeal ultimately boils down to two overarching issues. First, he contends that the District Court applied the wrong legal standard in assessing the motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), and then erred in dismissing his claims under that standard. Second, he argues that the District Court improperly stayed discovery while it considered the defendants' motions to dismiss.

**II.    Discussion**

We have plenary review over the question of whether the District Court applied the correct legal standard in evaluating the motions to dismiss. *Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008). We review "questions concerning the scope or opportunity for discovery" for abuse of discretion. *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 365 (3d Cir. 2001).

A.    *Motions to Dismiss*

1.    *Standard*

In evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the District Court must accept the plaintiff's well-pleaded allegations as true and draw all reasonable inferences in his favor. *Phillips*, 515 F.3d at 231. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts sufficient to "nudge [his] claims across the line from conceivable to plausible." *Id.* (quoting *Twombly*, 550 U.S. at 570).

The District Court used the correct standard in evaluating Mann's claims. It dedicated an entire section of its opinion to discussing the proper standard under Rule 12(b)(6) and noted that a motion to dismiss should be granted when "taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of

4

law." (App. 16.) The District Court recognized that the motions were governed by Rule 12(b)(6) as interpreted by the Supreme Court in *Twombly* and this Court in *Phillips* (*id.* at 15-16), and it continually referred to those principles in its discussion of each of Mann's claims.[3] Accordingly, there is no merit to Mann's contention that the District Court applied the wrong legal standard in evaluating the motions to dismiss.[4]

2. *Merits*

Mann also argues that even if the District Court used the correct legal standard, it erred in applying the standard to dismiss his claims. Specifically, Mann contends that he adequately stated a claim for relief on three grounds: (1) the defendants retaliated against him, in violation of the First Amendment, by imposing heftier fines after Mann "used legal process" to successfully defend himself against other fines; (2) the defendants maliciously prosecuted him in violation of the Fourth Amendment; and (3) the defendants violated his Fourteenth Amendment rights to due process and equal protection by using harassment and intimidation to "railroad[ him] into a condemnation." (*Id.* at 41-42.)

---

[3] Mann fails to cite either *Twombly* or the "plausibility" standard it ushered in, instead choosing to rely on the now defunct "no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (Appellant's Br. at 22), which the Supreme Court squarely rejected in *Twombly*. *See Twombly*, 550 U.S. at 563 (*Conley*'s no-set-of-facts language "has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard").

[4] Even if the District Court had applied the wrong legal standard, that would not in itself entitle Mann to relief because our review of a motion to dismiss for failure to state a claim is *de novo*. *McTernan v. City of York, Pa.*, 577 F.3d 521, 526 (3d Cir. 2009).

a. *First Amendment Retaliation*

Mann's First Amendment retaliation claim is based on the assertion that, after he defended himself in court against $2,000 in fines for code violations, defendant Buffington cited Mann with another $2,000 in fines in retaliation for Mann's initial successful defense. To establish a First Amendment retaliation claim predicated on 42 U.S.C. § 1983, a plaintiff must prove the following elements: (1) he engaged in constitutionally protected conduct; (2) the defendant took adverse action sufficient to deter a person of ordinary firmness from exercising his rights; and (3) the adverse action was prompted by plaintiff's protected conduct. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

Our review of the record leads us to agree with the District Court that Mann failed to properly allege a retaliation claim. Nowhere in Mann's third amended complaint does he allege facts that could reasonably support the necessary "causal link" between his protected speech (successfully defending the initial fines) and the unlawful retaliation (an additional $2,000 fine). *Id.* Instead, Mann makes vague and conclusory allegations that he was assessed some unreasonable fine for some unspecified violation, in retaliation for "cho[osing] to use legal process as a way to protect and extend his rights." (App. 50.) *See Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1950 (2009) (a complaint must do more than allege a "mere possibility of misconduct;" it must show the pleader's entitlement to relief). These allegations fall far short of what is required to put the

defendants on notice of the claims and the bases for them. *See Phillips*, 515 F.3d at 233 (under Rule 8(a), plaintiff must plead enough facts to provide the defendant "fair notice" of the claim and the "'grounds' on which the claim rests") (citation omitted)); *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (on a motion to dismiss, "we are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation" (internal citations and quotation marks omitted)). Accordingly, Mann has not established that he was unlawfully retaliated against in violation of the First Amendment.

b. *Malicious Prosecution*

Mann next contends that defendants Buffington, Wentz, and Redshaw violated his Fourth Amendment right to be free from malicious prosecution by citing him with thousands of dollars in fines and bringing other "frivolous criminal charges"[5] against him. To state a claim for malicious prosecution predicated on the Fourth Amendment, a plaintiff must demonstrate that (1) the defendant acted maliciously for a purpose other than bringing the plaintiff to justice when (2) he initiated a criminal proceeding (3) without probable cause (4) which ended in the plaintiff's favor, but (5) caused the plaintiff to suffer a deprivation of liberty consistent with a seizure. *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007).

---

[5] As the District Court observed, "[a]lthough [Mann] was strongly encouraged to do so in the Court's previous order, [Mann] still does not identify the date, the forum, or specifically what charges were involved in these 'criminal charges.'" (App. 18.)

Even though on its third iteration, Mann's complaint wholly fails to allege that the defendants acted without probable cause in citing him for code violations. *See Estate of Smith v. Marasco*, 318 F.3d 497, 522 (3d Cir. 2003) (an "essential element of a malicious prosecution claim" is that plaintiff prove lack of probable cause). Furthermore, Mann did not allege that he suffered a "deprivation of liberty consistent with the concept of a seizure" as a result of the criminal citation proceedings. *Johnson*, 477 F.3d at 82. The only deprivation Mann claims to have suffered is "legal fees, court costs, and interminable inconvenience." (App. 38.) Such deprivations are insufficient to establish that Mann was the victim of a malicious prosecution under the Fourth Amendment. *See DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) (plaintiffs failed to state a § 1983 malicious prosecution claim because the inconvenience of attending trial was not a Fourth Amendment seizure; their travel was not restricted, they did not post bail, and they did not have to report to pretrial services). Accordingly, the District Court properly dismissed Mann's malicious prosecution claim.

c. *Due Process*

Mann alleges a violation of his substantive due process rights based on the defendants' unlawful agreement "to deprive [him] of his rights through the unlawful use of state authority as a way to coerce him into compliance with their wishes." (Appellant's Br. at 18.) Mann's due process claim that he was unfairly harassed into a condemnation proceeding is barred by the doctrine of collateral estoppel. Collateral estoppel applies

8

when: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (citations omitted). We have plenary review over a district court's decision regarding collateral estoppel. *Id.* at 248. Mann disputed only the identity of the issues prong in the District Court and now raises the additional argument that the issue was never actually litigated.

The Honorable Sheryl Ann Dorney presided over the condemnation proceeding in the Court of Common Pleas of York County. Judge Dorney rejected Mann's precise argument that the defendants harassed and intimidated him into selling his property for an unreasonably low price. (App. 69 (describing Mann's argument that the City had "bad faith or tainted motive" in obtaining his property "for as nominal price as possible" and noting that "we fail to see how this argument is valid.").) Addressing Mann's contention that the City "acted in bad faith by acting in consort with York College to obtain the propert[y] as inexpensively as possible," Judge Dorney concluded that Mann had "not overcome the heavy burden to show that the [City] has committed fraud or an abuse of discretion." (*Id.* at 68-69.) This record makes clear that the identical issue[6] Mann seeks

---

[6] We have held that "[t]o defeat a finding of identity of the issues for preclusion purposes, the difference in the applicable legal standards must be 'substantial.'" *Raytech Corp. v. White*, 54 F.3d 187, 191 (3d Cir. 1995). Judge Dorney evaluated Mann's claim

to raise on appeal was actually litigated in the state condemnation proceeding.

Accordingly, to the extent that Mann seeks to relitigate whether the defendants unlawfully coerced him into selling his property for a nominal value, the issue is barred by collateral estoppel.[7]

Mann's complaint also raises, though not explicitly, a "class of one" equal protection claim. The Equal Protection Clause of the Fourteenth Amendment requires that similarly situated individuals be treated alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). An equal protection claim may be brought by a

---

under state condemnation law, which places a "heavy" burden on the plaintiff to prove that "the condemnor is guilty of fraud, bad faith or has committed an abuse of discretion." (App. 68 (quoting *Downingtown Area Sch. Dist. v. DiFranesco*, 557 A.2d 819, 820 (Pa. Commw. Ct. 1989)).) Mann apparently asks us to evaluate his claim under a general due process rubric, which focuses on whether "the alleged harassment 'remove[d] or significantly alter[ed]' plaintiffs' liberty and property interests." *Thomas v. Independence Twp.*, 463 F.3d 285, 297 (3d Cir. 2006) (citation omitted). Although we recognize that the plaintiff's burden is greater in the context of state condemnation law than in pleading a due process violation, we find that the issue addressed and resolved in the condemnation proceeding is "in substance the same" as Mann's due process claim. *Raytech Corp.*, 54 F.3d at 193. Both schemes require a court to decide whether the defendants engaged in unlawful conduct to deprive the plaintiff of his property, and Mann has failed to persuade us that the legal standards are substantially different in this case. We therefore conclude that the identity prong is satisfied.

[7] Mann apparently concedes that he is collaterally estopped from relitigating whether the condemnation action was brought in bad faith. He states that Judge Dorney "decided (and quite correctly so) that the aforementioned misconduct was not relevant to the issue of the Condemnor having the power to take the subject property, nor did the obvious misconduct interfere with the procedure which eventually decided 'just compensation.'" (Appellant's Br. at 27.) However, Mann maintains that although "Judge Dorney decided properly on the condemnation issue," she failed to address "any civil rights issues which may have shared a possible commonality of facts." (*Id.*) For that reason, we address Mann's due process claim, as well as his retaliation and malicious prosecution claims.

"class of one," an individual claiming "that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). To state a claim under the "class of one" theory, a plaintiff must show that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips*, 515 F.3d at 243 (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)). In *Olech*, the Supreme Court upheld the plaintiff's claim that the village violated the Equal Protection Clause by arbitrarily demanding a 33-foot easement to connect her property to the municipal water supply while only demanding a 15-foot easement from other property owners. *Olech*, 528 U.S. at 565. The Supreme Court later clarified that "[w]hat seems to have been significant in *Olech* ... [was] the complaint alleged that the board consistently required only a 15-foot easement, but subjected Olech to a 33-foot easement." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 128 S. Ct. 2146, 2153 (2008).

In his complaint, Mann sets forth general allegations that "he was subjected to unequal and unauthorized mistreatment on a selective basis because of the defendants['] unlawful desire for his property," in violation of his right to equal protection. (App. 49.) Although he alleges that "[o]ther citizens are not treated in this fashion, particularly the political leaders of the City of York" (*id.* at 41), Mann fails to plead that he was treated differently than other similarly situated individuals, that is, other property owners of

11

blighted structures in the City of York. While *Olech* may not require plaintiffs to "identify in the complaint specific instances where others have been treated differently," *Phillips*, 515 F.3d at 245, the complaint is still deficient. Without any allegation regarding other blighted property owners, Mann simply cannot "nudge [his] claims across the line from conceivable to plausible." *Id.* at 234 (quoting *Twombly*, 550 U.S. at 570); *see also Hill*, 455 F.3d at 239 ("class of one" claim failed because plaintiff, a Borough Manager, did "not allege the existence of similarly situated individuals – i.e., Borough Managers – who [the Mayor] treated differently than he treated [plaintiff]"). Mann's bald assertions that the defendants violated his right to equal protection because "he was selectively and vindictively cited and prosecuted by the City in an effort to force him into cooperation with York College" (App. 44), "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." *Iqbal*, 129 S. Ct. at 1951 (citation omitted). Accordingly, the District Court properly dismissed Mann's equal protection claim.

B.    *Discovery*

Mann contends that it was an abuse of discretion for the District Court to stay discovery while it considered the defendants' motions to dismiss.[8] In certain

_____

[8] Mann urges us to apply dicta contained in our decision in *Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004), to determine that he was entitled to discovery before dismissal. The facts of *Alston* are easily distinguishable from those in the case at hand. For one, the plaintiff in *Alston* was *pro se* and a prisoner involuntarily committed to a psychiatric hospital. Furthermore, despite our recognition that "confined prisoner[s]" face difficulty

12

circumstances it may be appropriate to stay discovery while evaluating a motion to dismiss where, if the motion is granted, discovery would be futile. *See Iqbal*, 129 S. Ct. at 1954 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery."). That is precisely the case here. As laid out above, none of Mann's claims entitle him to relief. That, as Mann contends, he could have produced "a litany of facts" substantiating his claims (Appellant's Br. at 30), if he had more time to conduct discovery, misses the mark. *See Mitchell v. McNeil*, 487 F.3d 374, 379 (6th Cir. 2007) (because plaintiffs' complaint failed to state a claim for relief, "it follows that the district court did not err in granting defendants' Rule 12(b)(6) motion before permitting discovery by plaintiffs"). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and therefore may be decided on its face without extensive factual development. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989) (the purpose of Rule 12(b)(6) is to "streamline[] litigation by dispensing with needless discovery and factfinding"); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("A motion to dismiss based on failure to state a claim for relief should ... be resolved

---

in bringing civil rights actions "owing to their incarceration or institutionalization," we concluded that the district court did not err in failing to order discovery because "it is not essential at the pleading stage." *Id.* at 233 n.6, 236. Moreover, the central holding of the case was that the district court improperly applied a stringent pleading standard that conflicted with Rule 8(a)'s notice pleading. *Id.* at 232 ("[T]he lack of discovery was not the real barrier blocking Alston's path to relief. Rather, it was the stringent pleading standard presupposed by the parties and the District Court."). Accordingly, we decline to extrapolate the reasoning of *Alston* to this case, brought by a represented party and properly evaluated under Rule 8(a)'s notice pleading standard.

before discovery begins."); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (the idea that discovery should be permitted before deciding a motion to dismiss "is unsupported and defies common sense [because t]he purpose of F. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery"). Accordingly, the District Court did not abuse its discretion in staying discovery pending resolution of the motions to dismiss.[9]

## III. Conclusion

For the foregoing reasons, we will affirm the order of the District Court granting the defendants' motions to dismiss.

---

[9] Mann suggests that the District Court should have granted him leave to amend his complaint. Because Mann was permitted to do so twice before the present motions to dismiss were filed, we think the District Court was well within its discretion in finding that allowing Mann a fourth bite at the apple would be futile. *See Phillips*, 515 F.3d at 245 (dismissal without leave to amend is justified where the amendment would be futile); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir. 1993) (district court may deny amendment based on "repeated failure to cure deficiencies by amendments previously allowed") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).