Elmer J. Greger and Ida Mae Greger, his wife *v.* Canton Township, a municipal corporation, The City of Washington, a municipal corporation and the Pennsylvania Department of Transportation, Appellants. (3 Appeals)

Argued November 2, 1978, before Judges WILKINSON, JR., BLATT and MACPHAIL, sitting as a panel of three.

*Donald J. McCormick,* Special Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellant, Department of Transportation.

*John Solomon,* for appellant, Canton Township.

*Clark A. Mitchell,* with him *Hanna, Mitchell & Mitchell,* for appellant, City of Washington.

*Samuel P. Kamin,* for appellees.

OPINION BY JUDGE MACPHAIL, March 1, 1979:

Mr. and Mrs. Elmer Greger own real estate in Canton Township (Township), Washington County, Pennsylvania. The tract is divided into north and south sections by an alley. There are improvements on both sections. The northern section fronts on Caldwell Avenue, which intersects with Hays Avenue at its eastern terminus. Caldwell Avenue is Legislative Route No. 62159. Canton Township is contiguous with the City of Washington (City), the boundary line being east of the Greger tracts, along and to the west of Hayes Avenue.

When the Gregers purchased their real estate, a catch basin constructed and maintained by the Pennsylvania Department of Transportation (Department) was located on the north side of Caldwell Avenue opposite the northern section of the Greger tract. A culvert, also constructed and maintained by the Department, was located under Caldwell Avenue. That culvert drains the water from the catch basin in the direction of the Greger property and now into a trench crossing that property in a southerly direction to a culvert at the alley separating the northern and southern sections of the Greger tract. From there the water continues in a trench in a southerly direction to another culvert under Addison Street, which marks the southern boundary of the south section of the Greger tract.

Since the Gregers purchased their land, the flow of storm water has increased. In addition, sewage waste now enters the trench crossing the Greger tracts. The record indicates that this discharge comes

from septic systems constructed on inadequately sized lots to the east and to the north of the Greger real estate and on the north and south sides of Caldwell Avenue. All of those lots are in Canton Township.

Due to the conditions described above, the Gregers claim that there has been a de facto taking of their real estate by the City, the Township and the Department. On that theory the Gregers petitioned for the appointment of viewers. Preliminary objections were filed in the Washington County Court of Common Pleas by all three governmental bodies alleging that there was no de facto taking, that the statute of limitations barred the suit and that the Court of Common Pleas erred in referring the matter of the statute of limitations to a board of viewers. Those preliminary objections were overruled, and on appeal from that order to this Court we remanded the case on June 23, 1976, for an evidentiary hearing to determine whether a de facto taking had occurred and whether the action was barred by the statute of limitations.[1]

The lower court, on the basis of an evidentiary record developed through depositions, held that a de facto taking had occurred and that the action was not barred by the statute of limitations. In a per curiam order it dismissed the preliminary objections, and each of the governmental bodies involved appealed to this Court. All of the appeals have been consolidated for argument and disposition.

Section 502(e) of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, as amended, 26 P.S. §1-502(e), authorizes landowners to file a petition for the appointment of viewers where a compensable injury has been suffered and no declaration of taking has been filed. Our courts have

---

[1] *Greger v. Canton Township*, 25 Pa. Commonwealth Ct. 279, 360 A.2d 792 (1976).

characterized such circumstances as a de facto taking. In *Griggs v. Allegheny County,* 402 Pa. 411, 168 A.2d 123 (1961), *rev'd on other grounds,* 369 U.S. 84 (1962), our Supreme Court held that a de facto taking occurs when an entity clothed with the power of eminent domain substantially deprives a landowner of the beneficial use and enjoyment of his property. In *Lizza v. Uniontown City,* 345 Pa. 363, 28 A.2d 916 (1942), our Supreme Court held that the landowner's deprivation must be the direct and necessary consequence of the entity's action.

The arguments made to us here are not so much concerned with the issue of whether the Gregers have sustained a compensable injury, but rather each governmental unit claims that it has no responsibility for that injury and therefore cannot be required to respond to the Gregers for damages.

It is fundamental that the findings of fact of the lower court will not be disturbed if they are based upon substantial evidence. We do note, however, that that court did not see or hear the witnesses, nor did that court make specific findings in its per curiam order of November 23, 1977. The testimony obtained by deposition consisted of that of an engineer and Mr. Greger. In addition, there are various documentary exhibits attached as part of the record.

The engineer testified that the Township permitted the installation of septic tanks on properties too small to accommodate them, thus causing a flow of sewage effluent onto the Gregers' property. In addition, he said that the Township did not properly maintain Addison Avenue and the alley separating the Gregers' two tracts, thus causing water in substantial amounts to drain onto the southern section of Gregers' real estate. Mr. Greger testified to several instances where Township authorities actually dug or opened ditches to channel sewage effluent from adjoining properties

and from Caldwell Avenue onto his real estate. It has been held that where the evidence shows that the flooding of land and buildings is the direct and necessary consequence of the Township's drainage plan, even though the subject property may have been under a servitude of receiving natural drainage, there is a de facto taking by the Township. *Hereda v. Lower Burrell Township,* 159 Pa. Superior Ct. 262, 48 A. 2d 83 (1946). We believe that the facts of this case come within the decision in the *Hereda* case, and therefore we will affirm the lower court's ruling with respect to the Township.

The engineer testified that the Commonwealth had responsibility for the drain pipe and catch basin previously referred to in this opinion and that this storm drain facility discharges storm water onto the Greger property. As we have previously noted, both the catch basin and the Department's culvert were in place when plaintiffs bought their land. The engineer testified that the City, the Township and adjoining property owners were using the Commonwealth's storm drain facility for storm water drainage and to drain the overflow from residential septic systems. The Commonwealth argues that the instant case is controlled by *Lehan v. Department of Transportation,* 22 Pa. Commonwealth Ct. 382, 349 A.2d 492 (1975), where we held that where an injury is the result of neighbors dumping waste into a highway drainage system, the Commonwealth cannot be held responsible for a de facto taking because the injury is not the direct and necessary consequence of the Department's acts. While Mr. Greger testified to several instances where Township employees and neighbors did acts to channel water into the catch basin and through the culvert, the only testimony concerning any actions by the Department concerned the forceful removal of an obstruction from the culvert placed there by Mr. Greger

and other instances where the Department cleaned the culvert and catch basin. We hold that the record here simply does not contain substantial evidence to prove that the Gregers' injury was the direct and necessary consequence of the Department's actions. Accordingly, we will reverse the order of the lower court as it pertains to the Department.

Concerning the City's liability, the engineer testified that the City inadequately provided for storm drainage because the flow of water through the culvert under Hays Avenue and thence to Caldwell Avenue was contributing to the problem on the Greger tract. We find nothing in the record to indicate that the City did anything to cause injury to the Greger real estate. It will be observed from the engineering report filed as an exhibit in this case that the City's culvert is some distance (nearly one block) from the Greger real estate. The culvert lies partly in the Township and partly in the City. Mr. Greger testified that he thought that the culvert was maintained by the Township and that the trench between Hays Avenue and Caldwell Avenue was dug by the Township. In any event, the drainage through the culvert on Hays Avenue would be a remote cause of the Gregers' problem at best.

There remains for disposition the question of the statute of limitations. The initial petition for the appointment of viewers was filed April 29, 1974. An amended petition was filed January 24, 1975. Mr. Greger testified that he first noticed his present problems in the spring of 1969, and that the problems became serious enough to affect his beneficial enjoyment of his real estate in the spring of 1970. Without a finding a specific date of injury, the lower court simply held that the action was not barred by the six year statute of limitations imposed by Section 524 of the Code, 26 P.S. §1-524. We hold that there is sub-

stantial evidence to support the lower court conclusion that this action is not barred by the statute of limitations.[2]

ORDER

AND Now, this 1st day of March, 1979, the order of the Court of Common Pleas of Washington County, dated November 23, 1977, is reversed as to the preliminary objections filed by the Commonwealth of Pennsylvania and the City of Washington. The order is affirmed as to Canton Township.

---

[2] There is also some merit in the Gregers' contention that Section 524 may not apply at all to a de facto taking since the statutory language appears to be limited to circumstances where the condemnor has made payment or where there has been injury but no taking, neither of which has occurred here.