Clarence **MOORE** and Pennlyco, Ltd.

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 23, 1994,

Decided June 6, 1995.

Reargument Denied July 19, 1995.

Virginia J. Davison, Asst. Counsel, for appellant.

Carl E. Barlett, for appellees.

Before COLINS, President Judge, and SMITH, J., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

The Commonwealth of Pennsylvania, Department of Environmental Resources (DER), appeals from the order of the Court of Common Pleas of Lycoming County dismissing DER's preliminary objections to the petition for appointment of viewers filed by Clarence Moore and Pennlyco, Ltd. (collec-

tively Moore) pursuant to section 502(e) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–502(e).

Moore, an oil and gas developer, and Pennlyco, Ltd., a Maryland corporation, are the owners as tenants-in-common of a fee simple absolute interest in the oil and gas estate of certain real property comprised of two contiguous parcels representing 6,841 and 18,780 acres located in Tiadaghton State Forest, Lycoming County. In 1933, the Central Pennsylvania Lumber Company conveyed the surface estate of this property to the Commonwealth, but reserved the oil and gas estate with a fifty-year access for development. In April 1975, Moore acquired from a successor to the lumber company 50% of the oil and gas estate of the parcels, and acquired the remaining 50% of the oil and gas estate in 1983 from Mobil Oil Company. Moore later conveyed a 50% interest in the oil and gas estate to Kenneth Yates, who thereafter conveyed that interest to Pennlyco.

In October 1979, DER asserted to Moore that it would claim title to the oil and gas estate on March 28, 1983 because it believed that the lumber company's reservation of the estate was an estate for years, terminating fifty years from the date of the 1933 conveyance and resulting in title reverting to the Commonwealth. DER thereafter prepared maps outlining the subject rights as reserved for the Commonwealth in 1983, and these maps were made available to the public. In November 1983, DER publicly advertised a lease auction of the interest, notice for which stated that the Commonwealth considered itself to be owner of the oil and gas estate.

Pursuant to the auction, DER leased the oil and gas estate to C.E. Beck/Pennzoil, which lease generated income for DER from December 1984 through 1989 in the approximate amount of $297,000. In May 1984, Moore instituted a quiet title action to protect his ownership of oil and gas rights on the properties. In October 1984, DER conceded that Moore was owner of the oil and gas rights on the 6,841–acre parcel, but continued its claim of ownership regarding the remaining larger parcel. However, this

Court in November 1989 held that Moore was the owner in fee simple absolute of the oil and gas estate of the larger parcel. *Moore v. Department of Environmental Resources (Moore I),* 129 Pa.Commonwealth Ct. 628, 566 A.2d 905 (1989).

In October, 1992, Moore filed a petition for the appointment of viewers alleging that as a direct result of DER's claim of ownership, Moore was unable to lease, develop, or in any way derive income from the property between 1979 and 1989. DER filed preliminary objections to the petition averring that Moore failed to state a cause of action and challenging the allegation of a *de facto* taking. The trial court held hearings in May 1993 at which several experts testified on behalf of Moore as to the desirable nature of the property due to the proximity of large wells drilled by other major oil companies which produce large amounts of natural gas; the value of the tract was due to the large area of land where there were various unique geological structures indicative of the entrapment of oil and gas; and the tracts of land had high potential for oriskany, a formation known to be productive of oil and gas.

The trial court found that Moore actively undertook to develop the oil and gas rights beginning in 1979 and always disclosed to potential developers or lessees DER's adverse claim to ownership; Yates, a business associate of Moore, attempted to market the property to potential investors starting in 1980, always advising the investors of DER's adverse claim; Moore, Yates, or parties acting on their behalf, contacted approximately fifty-one companies involved in oil and gas development who were interested in the oil and gas interests but would not invest until title problems were cleared up. Eventually, once DER's adverse claim was removed from the parcels and Moore regained clear title, he was able to lease the oil and gas interests.

Based upon these findings, the trial court concluded that DER's assertion of an ownership interest in the gas and oil rights directly caused potential investors to decline offers by Moore to develop or lease the oil and gas, thus putting a cloud on Moore's title and effectively negating any business propositions to develop the rights. The trial court

found that DER is clothed with the power of eminent domain, rejected the assertion that Moore failed to prove DER ever acted under its power to condemn, and noted that Pennsylvania courts have allowed landowners to recover for intrusions and loss of use and enjoyment of property resulting from government activity not done in the formal exercise of eminent domain.

As a result, the court found that Moore sustained his burden of proof through sufficient evidence to prove a taking of his oil and gas interests in the smaller parcel from October 3, 1979 to October 30, 1984, when DER conceded Moore's ownership; and in the larger parcel from October 3, 1979 until November 17, 1989, when this Court adjudicated title in favor of Moore. Accordingly, the trial court dismissed DER's preliminary objections and DER appealed to this Court.

On appeal, DER challenges the trial court's determination that Moore stated a cause of action for a *de facto* taking. DER also contends that the trial court erroneously relied on inadmissible hearsay in making those findings, leading to its conclusion that a *de facto* taking had occurred. For the reasons which follow, we conclude that Moore has not stated a cause of action based on a *de facto* taking. We will therefore reverse.

■ In order to find a *de facto* taking, a court must consider whether a governmental entity, clothed with the power of eminent domain, has by its conduct substantially deprived the property owner of the use and enjoyment of the property. *Conroy–Prugh Glass Co. v. Department of Transportation,* 456 Pa. 384, 321 A.2d 598 (1974); *Elser v. Department of Transportation,* —— Pa.Commonwealth Ct. ——, 651 A.2d 567 (1994).

■DER contends that no *de facto* taking has occurred because (1) Moore has not suffered substantial deprivation of the beneficial use of his property, since no oil or gas has been removed; (2) Moore did not establish exceptional circumstances that deprived him of that beneficial use; and (3) DER was not acting while clothed with the power of eminent domain when, purporting to be the owner of the oil and gas estate, it granted a lease.

■ As this Court in *Berk v. Department of Transportation,* 168 Pa.Commonwealth Ct. 560, 566, 651 A.2d 195, 198 (1995) has recently said:

There is no litmus formula to determine when government action will be deemed to have the effect of such taking. It has remained for the courts to provide, with case by case development, the needed doctrinal elaboration. *Filbert Limited Partnership Appeal,* 64 Pa.Commonwealth Ct. 605, 441 A.2d 1345 (1982). The United States Supreme Court has taken a similar case by case approach to the question of what constitutes a taking within the meaning of the Fifth Amendment to the United States Constitution, *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

■ An analysis of the case law establishes that, in Pennsylvania, government action has been found to effect a *de facto* taking in limited and discretely defined circumstances. In defining those circumstances, our Courts have fixed their "focus ... upon the nature of the complained of acts." *Enon Valley Telephone Company v. Market,* 90 Pa.Commonwealth Ct. 53, 493 A.2d 800, 802 (1985) (citing *Condemnation of the Land and Property of Jacobs,* 55 Pa.Commonwealth Ct. 142, 423 A.2d 442 (1980)). In *Enon Valley* and *Jacobs,* we upheld preliminary objections to complaints brought under the Eminent Domain Code. In *Jacobs,* the "[t]ownship unlawfully issued the building permits, improperly approved the subdivision, and wrongfully contributed to the design of the drainage plans" which caused serious drainage damage to the complaining property owners. We held these acts were not "purposeful and deliberate" and were "in no manner related or incidental to the Township's condemnation powers." *Id.* at 146, 423 A.2d at 443. As in *Enon Valley,* we quoted *Lutzko v. Mikris,* 48 Pa.Commonwealth Ct. 75, 79, 410 A.2d 370, 372 (1979) for the "well established" principle that "acts not done in the exercise of the right of eminent domain" and which "are not the immediate and necessary consequence of exercising that right

cannot" be the basis of an action in eminent domain.[1]

Other than where there has been physical intrusion into property or government activities in anticipation of condemnation, takings have been found "[w]hen deprivation of property occurs as a result of the enactment of laws," *Gardner v. Department of Environmental Resources*, 145 Pa.Commonwealth Ct. 345, 603 A.2d 279 (1992); that is, when "regulation goes too far, it will be recognized as a taking." *Pennsylvania Coal v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922). Of course, Moore does not complain that DER's *regulatory* actions have deprived him of property. He brings his petition to appoint viewers pursuant to section 502(e) of the Code on the allegations that DER held itself out to be the owner of the oil and gas estate.

We hold that these allegations do not state a cause of action for a *de facto* taking because they do not make out a claim that DER exercised its power of eminent domain over that property. As we said in *Darlington v. County of Chester*, 147 Pa.Commonwealth Ct. 177, 180, 607 A.2d 315, 320, *appeal denied*, 531 Pa. 657, 613 A.2d 562 (1992), "[t]o proceed under section 502(e) of the Code, a *de facto* taking must result from a governmental body's actual exercise of the power of eminent domain...."

This proposition is not idly stated, because not all compensable injuries suffered by property owners as the result of government action are takings, and not all lawful exercises of government power will suffice to state a *de facto* taking.[2] While it is true that the actual exercise of eminent domain is not

a requisite to a *de facto* taking, where *de facto* takings have been found, either physical intrusion or the imminence or inevitability of condemnation, as that term is statutorily defined,[3] has been an essential element.

In *Conroy–Prugh*, the Department of Transportation held hearings and caused widespread publicity about its intended condemnation of certain property. These activities caused the landowners' commercial property to become unprofitable due to loss of tenants. Our Supreme Court found a *de facto* taking of these properties, which were in the path in a highway construction project. The Supreme Court termed it "a significant fact" that "the property owner alleges that the publicity about the *inevitable condemnation* caused a loss of tenants." 456 Pa. at 389, 321 A.2d at 600 (emphasis added).

Following *Conroy–Prugh*, in *Department of Transportation v. Pastuszek*, 55 Pa.Commonwealth Ct. 138, 141, 422 A.2d 1223, 1225 (1980), we quoted with approval the common pleas court's assessment of a *de facto* taking:

> The actions of the Commonwealth in preparing plans for the acquisition of properties in the bed of ramp C, announcing its intentions over a period of ten years, conducting meetings with affected property owners, public officials and community leaders, acquiring properties on either side of the Petitioner's property, making offers to other property owners in the immediate area, physically intruding upon the property of the Petitioner, lead this Court to find that a *de facto* taking of the Petitioner's property had been damaged and a cloud placed upon it so as to adversely affect the

---

1. Thus, we have refused to allow recovery through eminent domain for injuries resulting from *negligent* acts and trespass committed by municipal bodies "clothed" with eminent domain powers. *See also Steckley v. Department of Transportation*, 46 Pa.Commonwealth Ct. 367, 407 A.2d 79 (1979), *aff'd* 494 Pa. 104, 429 A.2d 1112 (1981); *Culver v. Commonwealth*, 346 Pa. 262, 29 A.2d 531 (1943). Negligent acts, even those done by agents of the body condemning the complainants' property, are not actionable in eminent domain proceedings. *Culver*. To this extent, the boundaries of the Eminent Domain Code have been strictly circumscribed by our case law.

2. *See Condemnation of 2719, 2721 and 2711 E. Berkshire Street*, 20 Pa.Commonwealth Ct. 601, 605, 343 A.2d 67, 69 (1975) ("the landowners' difficulties ... are more basic. They have failed to allege that the Department's actions are the result of the lawful exercise of its eminent domain power. It is well settled that acts not done in the exercise of eminent domain ... cannot be the basis of any claim in that proceeding.")

3. "Condemn" means to take, injure or destroy private property by authority of law for a public purpose. 26 P.S. § 1–201(1).

Petitioner's beneficial use and enjoyment of that property.

In *McCracken v. City of Philadelphia*, 69 Pa.Commonwealth Ct. 492, 498, 451 A.2d 1046, 1049 (1982), we turned to the *Filbert Limited Partnership* case for guidance in deciding when a *de facto* taking will be found:

[t]he theory of *de facto* taking has been developed in response to the reality that activities carried on incident to massive, complex and time-consuming programs launched by government may so substantially interfere with one's use and enjoyment of his property, as to inflict a compensable injury in a constitutional sense or as being within applicable statutory law, even though the power of eminent domain has not been formally exercised against the property in question and there has been no physical intrusion of it.

We held in *McCracken* that construction activities connected to building a new elevated train, denying access and impeding access to properties, amounted to exceptional circumstances depriving the owners of the beneficial use of those properties, and a *de facto* taking had therefore occurred.

In *McGaffic v. Redevelopment Authority of the City of New Castle*, 120 Pa.Commonwealth Ct. 199, 548 A.2d 653 (1988), *appeals denied* 523 Pa. 644, 565 A.2d 1168 (1989), the trial court noted in its decision that this Court has found "activities incident to government programs may so pervasively interfere with use and enjoyment of property even where there has been no actual exercise of the power of eminent domain nor [sic] physical intrusion." *Id.* at 206, 548 A.2d at 656.[4] There, we concluded that the trial court's finding of a *de facto* taking was prop-

er based on the facts that the authority publicized redevelopment of an area in which the commercial rental property stood; the authority announced a clear intention to acquire through eminent domain all the properties listed in a public notice; and it conducted an appraisal of the property and entered into a contract for its sale five years before the property was subsequently removed from the acquisition list.

By contrast, in *Florek v. Department of Transportation*, 89 Pa.Commonwealth Ct. 483, 493 A.2d 133 (1985), we held that no *de facto* taking occurred when the Department of Transportation exercised its rights as an easement holder by re-installing a drain pipe to a different depth within its easement over the property owners' land. We noted that if a taking occurred at all, it occurred when the drainage pipe was originally placed on the property then owned by a predecessor. In *Capece v. City of Philadelphia*, 123 Pa.Commonwealth Ct. 86, 552 A.2d 1147 (1989), we held that a residential property owner did not state a cause of action for a *de facto* taking because mere unmarketability is not a substantial deprivation "unless that unmarketability *is a result of the property's inevitable condemnation* such that would place a cloud on the property's title." *Id.* at 90, 552 A.2d at 1149 (emphasis added).

■ It can be seen, then, that in those cases where *de facto* takings have been found absent physical invasion or appropriation of property,[5] the government body either exercised legislative or regulatory powers or engaged in activities that anticipated the acquisition or destruction of property for a public purpose;[6] that is, for "activities . . . incident

---

4. *City of Hazleton v. Hudock*, 2 Pa.Commonwealth Ct. 670, 281 A.2d 914 (1971) was cited for this proposition. We held in that case that the approval and funding of an urban renewal project followed by notices to and negotiations with property owners, and acquisition by agreement of some parcels were not sufficient in themselves to establish a *de facto* taking.

5. In *Borough of Boyertown Appeal*, 77 Pa.Commonwealth Ct. 357, 466 A.2d 239 (1983) we affirmed a trial court decision in which the court found an *actual* taking where the municipality made an unauthorized connection to privately owned water mains and supplied water to bor-

ough customers through those mains. We held that there was no showing of a *de facto* taking, although we agreed with the trial court's determination that the private water main owner suffered an "actual" taking, which we defined as that which occurs "when an entity having the power of eminent domain physically appropriates the possession or use of private property." *Id.* at 369, 466 A.2d at 245.

6. Black's Law Dictionary defines public purpose as a term of classification to distinguish the objects for which the government is to provide from those which are left to private interest. A public purpose has as its objective the promotion

to massive, complex and time consuming programs launched by government to solve ... the ... problems that beset our society...." *Hudock,* 2 Pa.Commonwealth Ct. at 675, 281 A.2d at 917. These anticipatory activities— for example, notice and publicity of intent to condemn, actual condemnation of surrounding properties, or prolonged restriction of access to property—amounted to exceptional circumstances depriving an owner of some of the value of his property.[7]

In the conduct which gives rise to the instant dispute, DER did not have as its object a government service or public improvement promoting the health, safety and welfare of Commonwealth residents. DER did not acquire or destroy Moore's subsurface rights for the purpose of leasing those rights, since the commercial development of oil and gas fields is not a government function. Rather, DER *claimed,* albeit mistakenly, an ownership interest in those rights which it believed had reverted to it as the surface owner. Hence, DER did not (and, indeed, could not) act as a condemnor under these circumstances. With regard to its mandate to protect Commonwealth forests as a natural resource, DER is chartered with certain powers, Section 1902–A of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, added by Act of December 3, 1970, P.L. 834, *as amended,* 71 P.S. § 510–2(1):

### § 510–2.  Forest powers and duties

The Department of Environmental Resources shall have the power, and its duty shall be:

(1) *To acquire,* in the name of the Commonwealth *by* purchase, gift, lease, or *condemnation, and hold as State forests,* sub-

ject to the conditions of any such lease, and subject to such reservations, if encumbrances, as the department deems to be consistent with such holding, *any lands ... which,* in the judgment of the department, *the Commonwealth should hold,* manage, control, protect, maintain, utilize and regulate, *as State forests or for reforestation,* and adding to and extending the existing State forests.  (emphasis added.)

DER is also given the power to purchase vacant or unappropriated lands to hold as state forests, 71 P.S. § 510–2(2); to hold, manage, develop and regulate state forest land for reforestation, soil conservation, and for water flow and fire control purposes, 71 P.S. § 510–2(3); to dispose of state forest land:

and the said department is hereby empowered, *to make and execute contracts or leases, in the name of the Commonwealth,* for the mining or removal of any valuable minerals that may be found in said State forests ... whenever it shall appear to the satisfaction of the department that it would be for the best interests of the State to make such disposition of said minerals....

71 P.S. § 510–2(6). DER's eminent domain powers as to state forests are limited to those circumstances found in section 510–2(1). While DER has the power under that subsection to acquire land by condemnation to hold as a state forest, it is *not* given the power to acquire land in order to develop oil and gas leases. Thus, DER did not "take" anything in the exercise of eminent domain power; it attempted to lease subsurface mineral mining rights. Such an attempt cannot constitute a *de facto* taking. *See Golding v. Township of New Britain,* 33 Pa.Commonwealth Ct. 635, 382 A.2d 509 (1978) (an entity

---

of the public health, safety, morals, general welfare, security, prosperity and contentment of all the inhabitors or residents [of a] political subdivision.  Black's Law Dictionary 1107 (5th ed. 1979).

7. That non-regulatory *de facto* takings have not been contemplated outside the context of formal condemnation or public improvements is illustrated by the following statement from *Filbert Limited Partnership:*

An ascertainable legal pattern emerges.... That pattern, translated into a working principle, may be stated thus: Where a property is designated for formal condemnation pursuant

to a planned, prospective public improvement, adverse interim consequences caused to the property by the prospect of condemnation will not constitute a *de facto* taking unless those interim consequences are that the owner is deprived of the use and enjoyment of the property, or is subjected to the loss of property before formal condemnation can provide compensation.  If there has been such an interim deprivation of use, or exposure to loss, then the principle of *de facto* taking becomes applicable to accelerate the time when the governmental authority must make compensation.

without express or necessarily implied condemnation powers cannot effect a *de facto* taking).

Hence, we disagree with the trial court's statement that "DER does not act as any private landowner when it makes a claim to oil and gas interests under state forest land" because that statement is grounded on the incorrect premise that "DER was the specific agency granted by law the responsibility for acquisition of oil and gas [and is] authorized to assert its power of eminent domain to acquire such interests". *In Re: Inverse Condemnation of 25,621 Acres of Oil and Gas Rights* (No. 92–02222, filed January 11, 1994), slip op. at 11. Simply put, DER was not acting as a condemnor; it was acting as an owner.

The only issue before us, which we decide adversely to Moore, is whether DER, for a closed period of time, took the oil and gas estate of Moore. We neither decide nor express any opinion herein as to whether Moore has an action, or the nature thereof, against DER and/or its lessee for its asserted ownership of the subject property.

Accordingly, we will reverse the trial court's order dismissing DER's preliminary objections, sustain the preliminary objections of the DER and dismiss the petition of Moore for the appointment of viewers.

### ORDER

AND NOW, this 6th day of June, 1995, the order of the Lycoming County Common Pleas Court at No. 92–02222, dated January 11, 1994, is reversed, the preliminary objections of the Department of Environmental Resources are sustained and the petition for the appointment of viewers by Clarence Moore and Pennlyco, Ltd. is dismissed.