**FPM Development LLC. v. Borough of Coopersburg**

C.P. of Lehigh County, no. 2007-C-0468.

*Patrick J. Reilly,* for plaintiff.

*Christopher W. Gittinger,* for defendant Borough of Coopersburg.

*Frank G. Procyk,* for defendant Coopersburg Municipal Authority.

FORD, *J.,* March 10, 2011—

## Pa.R.A.P. 1925(a) OPINION

The plaintiff, FPM Development, LLC, has filed a

notice of appeal from an order of this court filed December 15, 2010. In that order, I sustained a statutory preliminary objection of the defendants, the Borough of Coopersburg ("Coopersburg") and the Municipal Authority of the Borough of Coopersburg ("Coopersburg Authority"), to the plaintiff's petition for appointment of a board of viewers and dismissed the petition.

In the petition, plaintiff claimed that certain actions of the defendants had made development of plaintiff's property located in Coopersburg impossible. Plaintiff asserted that defendants' actions amounted to a de facto taking for which plaintiff was entitled to compensation. As I explain in this opinion prepared pursuant to Pa.R.A.P. 1925(a), the actions of the defendants did not constitute a de facto taking. For this reason, I acted properly in sustaining defendants' preliminary objection and dismissing the plaintiff's petition.

## PROCEDURAL HISTORY

On February 9, 2007, plaintiff filed the petition for appointment of a board of viewers pursuant to 26 Pa.C.S. § 502. In the petition, plaintiff averred that the defendants, through their actions, denied plaintiff all reasonable use of property it owns in Coopersburg, Lehigh County. On February 14, 2007, the Honorable J. Brian Johnson entered an order appointing a three-person board to review plaintiff's claim of a de facto taking.

In March of 2007, both defendants filed preliminary objections to plaintiff's petition for appointment of a board of viewers. On April 19, 2007, the plaintiff answered the preliminary objections. Through an order dated June 29,

2007, the Honorable Barry McAndrews vacated the court's order of February 14, 2007, and disbanded the board of viewers pending resolution of the preliminary objections.

On August 24, 2010, I conducted an argument on the defendants' preliminary objections. The parties engaged in discovery to develop a factual record for the disposition of the preliminary objections. (Defendants attached to their supplemental brief in support of the preliminary objections a factual record which contained Exhibits A through Q. Plaintiff stipulated that Exhibits A through I constituted the factual record. However, plaintiff did not stipulate that Exhibits J through Q were part of the record. Thus, in addressing defendants' preliminary objections, I considered only Exhibits A through I.)

On December 15, 2010, I entered an order sustaining the defendants' preliminary objection to plaintiff's petition based on the argument that the defendants' actions did not amount to a de facto taking of plaintiff's property. (I dismissed all of the defendants' other preliminary objections as moot.) Based on this ruling, I dismissed plaintiff's petition.

On December 27, 2010, plaintiff filed post-trial motions requesting that the court reverse its order of December 15, 2010. I denied plaintiff's post-trial motions by order filed on January 11, 2011.

On January 13, 2011, plaintiff filed the current notice of appeal to the Commonwealth Court. In the appeal, plaintiff challenges my December 15, 2010 order sustaining defendants' preliminary objection and dismissing plaintiff's petition for appointment of a board

of viewers.

In response to an earlier order, plaintiff filed its "concise statement of matters complained of on appeal" (concise statement) under Pa.R.A.P. 1925(b) on January 28, 2011.

## FINDINGS OF FACT

From the evidentiary record stipulated to by the parties, I made the following findings of fact and relied on these findings in ruling on the defendants' preliminary objections.

1. Plaintiff, FPM, is a Pennsylvania limited liability corporation with its address at 33 South Seventh Street, Allentown, Pennsylvania. Plaintiff is owned exclusively by Fred Derby, Patrick Reilly and Mark Ford.

2. Defendant Coopersburg is a Pennsylvania municipality with a mailing address of 5 North Main Street, Coopersburg, Pennsylvania.

3. Coopersburg Authority is a municipal authority established by defendant Coopersburg with a mailing address of 5 North Main Street, Coopersburg, Pennsylvania.

4. Decades ago, Coopersburg created the Coopersburg Authority and granted that body responsibility for the building and construction of a sanitary sewer within the borough. Coopersburg Authority then constructed a sewer system in the borough.

5. Coopersburg leases the sewer system to Coopersburg Authority which is responsible for

operating, maintaining and repairing the system.

6. Property owners within Coopersburg who wish to connect to the borough's sewer system must submit a permit request to Coopersburg.

7. On October 15, 1970, Coopersburg and Coopersburg Authority entered an agreement with Upper Saucon Township ("Saucon Township") and Upper Saucon Township Municipal Authority ("Saucon Authority"). Under the agreement, Saucon Township and Saucon Authority allowed Coopersburg and Coopersburg Authority to connect their sewer system to the Saucon sewer system. Saucon Township's sewer system has a sewage collection component and a sewage transfer and disposal component. Under the agreement, sewage and waste collected in the Coopersburg sewer system was to be discharged into the Saucon Township sewer system for treatment and then disposal. The agreement set limits on the amount of sewer inflow from Coopersburg into Saucon Township's sewer system during peak flow conditions.

8. On February 22, 1996, Saucon Authority imposed a moratorium on all new sewer connections within Coopersburg. Saucon Authority imposed the moratorium because the inflow from the Coopersburg sewer system into the Saucon sewer system regularly exceeded the maximum amount of inflow allowed under the 1970 agreement.

9. Under the terms of the 1970 agreement, Saucon Township sought arbitration to address its dispute with Coopersburg over the sewer inflow problem.

10. An arbitration panel comprised of Donald H. Lipson, Dennis E. Harman and Michael S. Moulds issued an award on May 8, 2003. The arbitrators' award was confirmed by court order dated September 24, 2003, in Lehigh County case number 2003-C-2267. Under the arbitrators' award, Coopersburg was required to use good faith and to take all appropriate steps to accelerate the elimination of excess infiltration and inflow from the Coopersburg sewer system into the Saucon sewer system. The award required that Coopersburg complete its remedial efforts by the end of 2004. This deadline was based on the arbitration testimony of William A. Erdman, a Coopersburg engineer. Mr. Erdman testified before the arbitration panel that the inflow and infiltration issues would be corrected by 2005.

11. In June of 2003, shortly after the arbitrators' award, plaintiff purchased an 8.5970 acre tract within Coopersburg with the intent to create a residential development at this site.

12. On June 11, 2002, prior to plaintiff's purchase of the property, the previous owner of the property, McQuiddy Family Properties, Inc. ("McQuiddy"), obtained conditional final approval from Coopersburg to construct 27 single homes on the lot. Plaintiff intended to carry out this development on the property.

13. As part of the conditional final approval previously obtained by McQuiddy, plaintiff had to obtain permits from Coopersburg to connect the homes in the proposed development to the Coopersburg sewer system.

14. When plaintiff purchased the property in 2003,

its three owners knew of the moratorium on sewer connections within Coopersburg. However, plaintiff's owners were also aware of the arbitration award which required that repairs to the Coopersburg sewer system be completed by the end of 2004. Based on this consideration, plaintiff's owners believed that Saucon Township would remove the moratorium on sewer connections within Coopersburg by 2005. They intended to start construction of the development at that time.

15. Based on the estimates of its realtor, Jasper Torchia, plaintiff's owners anticipated profits of 1.6 to 2.7 million dollars from sales of homes in the development.

16. Through July of 2009, Coopersburg spent approximately $800,000 in attempting to correct the inflow problem with its sewer system. For each of the past several years, these appropriations on repairs to the sewer system have accounted for 30 to 35 percent of Coopersburg's annual budget.

17. In attempting to repair its sewer system, Coopersburg has submitted numerous Corrective Action Plans ("CAP") to the Pennsylvania Department of Environmental Protection ("DEP"). The most recent CAP was submitted to the DEP on October 31, 2006. The DEP approved this CAP, but Saucon Township appealed the approval.

18. Since the entry of the arbitration award, Coopersburg and Coopersburg Authority have made good faith efforts to alleviate the excess infiltration and inflow from the Coopersburg sewer system into the Saucon sewer system. Specifically, defendants have repaired numerous

main and lateral sewer lines and manholes within the sewer system. For an extensive itemization of repairs to the Coopersburg sewer system as of July 31, 2006, see Appendix 7B of the most recent Coopersburg CAP, which is attached to the deposition of Mr. Erdman (Exhibit E of defendants' supplemental brief) as Erdman Exhibit No. 1.

19. In spite of their efforts, Coopersburg and Coopersburg Authority have been unsuccessful in eliminating the inflow problem with the Coopersburg sewer system. Thus, Saucon Authority has not yet removed the moratorium on sewer connections in Coopersburg.

20. Recently, Coopersburg and Saucon Township entered an agreement which established deadlines for Coopersburg to complete the corrective measures set forth in the CAP. The parties agreed that the necessary repairs to the Coopersburg sewer system should be completed by the occurrence of 10 significant storm events that produce peak flows in excess of 1.4 million gallons per day at Coopersburg's metering station, or by December 20, 2011, whichever is later. This agreement does not address the question of when Saucon Township would lift the moratorium on Coopersburg sewer connections.

Pursuant to this agreement, Saucon Township withdrew its appeal of the DEP's approval of Coopersburg's most recent CAP.

21. Mr. Erdman, in his deposition, testified that he did not know when, if ever, Saucon Township will agree that the inflow and infiltration issues have been addressed to the point where there can be new connections to the

Coopersburg sewer system.

## DISCUSSION AND CONCLUSIONS OF LAW

In its concise statement, plaintiff contends that this court erred in concluding that the actions of defendants did not constitute a de facto taking of plaintiff's real property. Specifically, plaintiff asserts that this court "inappropriately relied on *Appeal of Jacobs,* 423 A.2d 442 (Pa. Commw. 1980), in holding that the harm to [plaintiff] was not a result of the 'purposeful and deliberate' action of [defendants], but was instead akin to the shortcomings of the government entity in appeal of Jacobs." Plaintiff further contends that this court erred in concluding that defendants made a good faith effort to abide by the terms of the arbitrators' award and correct the water inflow problem in the Coopersburg sewer system. Finally, plaintiff argues that this court should have analyzed this case under the precedent of *Greger v. Canton Township,* 399 A.2d 138 (Pa. Commw. 1979).

Contrary to the contentions of the plaintiff, I properly analyzed this case under the binding precedent of *Appeal of Jacobs.* Further, all of my factual determinations are rooted in evidence found in the record as stipulated to by the parties.

Plaintiff, in its petition for appointment of a board of viewers, claimed that the actions of Coopersburg and Coopersburg Authority, in failing to correct the inflow problem, made development of plaintiff's property impossible and amounted to a de facto taking. In paragraphs 11 through 14 of the petition, plaintiff specifically described the actions of defendants which allegedly led to

the de facto taking:

11. The borough has failed to comply with the decision and award of [the] arbitrators and the Coopersburg Sewer System remains non-operational.

12. The borough has failed to act diligently and in good faith to resolve the issues which cause the moratorium to remain in effect, by delaying, stalling and failing to undertake the work required to repair the Coopersburg Sewer System.

13. The Borough's failure to remedy and make operational the Coopersburg Sewer System is unduly oppressive to [plaintiff], and forces it to bear a public burden which in all fairness and justice should be borne by the Borough as a whole. Such inaction by the Borough has had a significant impact on [plaintiff], and has interfered with its distinct investment-backed expectations.

14. As a direct and proximate result of the failure of the Borough to remedy and make operational the Coopersburg Sewer System, and thereby eliminate the moratorium on [sewer connections] in the Borough, and because the Borough does not permit on site septic systems, [plaintiff] has been deprived of all economically beneficial uses of its land. All of the damages sustained by [plaintiff] were due to the direct failure of the Borough to remedy and make the Coopersburg Sewer System operational.

A court may not dismiss preliminary objections to a petition for appointment of a board of viewers that alleges

a de facto taking without first conducting an evidentiary hearing to determine whether a de facto taking has occurred. See *Nether Providence Township v. Jacobs*, 297 A.2d 550 (Pa.Commw. 1972). I read and used the stipulated factual record to decide if the actions of the defendants constitute a de facto taking of plaintiff's property.

According to 26 Pa.C.S. § 502, a de facto taking occurs when the actions of any entity clothed with the power of eminent domain substantially deprive an owner of the use and enjoyment of his property. *Lehigh-Northampton Airport Authority v. WBF Associates, L.P.*, 728 A.2d 981, 985 (Pa.Commw. 1999). A de facto taking occurs only where a governmental entity "either exercise[s] legislative or regulatory powers or engage[s] in activities that anticipate[] the acquisition or destruction of property for a public purpose." *Moore v. Department of Environmental Resources*, 660 A.2d 677, 682 (Pa.Commw. 1995). There is no bright line test to determine when government action results in a de facto taking. Instead, each case must be examined and decided on its own facts. *Id.* at 680.

Where a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending on a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action.... These inquiries are informed by the purpose of the takings clause, which is to prevent the government from "forcing some people alone to

bear public burdens which, in all fairness and justice, should be borne by the public as a whole." (Citations omitted.) *Nolen v. Newtown Township*, 854 A.2d 705, 708 (Pa.Commw. 2004) (citing *Palazzolo v. Rhode Island*, 533 U.S. 606, 617-18 (2001)).

When determining whether a de facto taking has occurred, a court must focus on the nature of the government action in question. *Appeal of Jacobs*, 423 A.2d 442, 443 (Pa. Commw. 1980). In Pennsylvania, courts are more likely to find a taking where the government action complained of is "purposeful and deliberate." *Id.* Conversely, courts decline to find a taking where the harm to the property owner stems not from deliberate government action, but from negligence or shortcomings on the part of the government actor. For instance, in *Appeal of Jacobs*, the Commonwealth Court held that no de facto taking occurred when a property owner experienced flooding due to a township's unlawfully issuing building permits, improperly approving a subdivision and wrongfully contributing to the design of a drainage plan. *Id.* In explaining its holding, the Commonwealth Court observed that the government actions in question "were in no way related or incidental to the Township's condemnation power." *Id.* at 443-44.

In the case at hand, the actions of defendants which plaintiff contends caused a de facto taking were not "purposeful and deliberate." They were akin to the shortcomings of the government entity in *Appeal of Jacobs*. Here, defendants made good faith efforts to abide by the terms of the arbitration award and correct the water inflow problem with the Coopersburg sewer system. In attempting to address the problem, defendants submitted

numerous CAPs to the DEP. Defendants also made repairs to many main and lateral sewer lines and manholes within the Coopersburg sewer system. Defendants spent approximately $800,000 on these corrective measures through July of 2009. Unfortunately, none of these efforts has alleviated the inflow problem so the moratorium on sewer connections in Coopersburg remains in place.

The moratorium harms plaintiff by preventing it from developing its land in Coopersburg. However, plaintiff's harm did not result from any intentional act by defendants, such as the enactment of a new ordinance or the commencement of a new government project. On the contrary, plaintiff's harm is an unintended consequence of defendants' inability to adequately repair the Coopersburg sewer system despite its efforts. The defendants' predicament is not related or incidental to its condemnation power. Under *Appeal of Jacobs*, the nature of the defendants' actions prohibits a finding that a de facto taking of plaintiff's property occurred.

I now briefly address plaintiff's contention that this court erred by not analyzing this case under the precedent of *Greger v. Canton Township*, 399 A.2d at 138. In *Greger*, Canton Township proactively designed and constructed an ineffective drainage system that led to flooding on the property of the party claiming a de facto taking. Among other things, "Township Authorities actually dug or opened ditches to channel sewage effluent from adjoining properties...onto [the claimant's] real estate." *Id.* at 140. In the case at hand, defendants did not deliberately and proactively create a defective drainage plan. Instead, the defendants failed to adequately repair an already existing

sewer system. Because the facts of the case at hand more closely resemble those of *Appeal of Jacobs,* this court acted properly in analyzing plaintiff's claim for a de facto taking under that jurisprudence.

In sum, because defendants' actions did not constitute a de facto taking of plaintiff's property, I properly sustained the preliminary objection raising this issue and dismissed plaintiff's petition for appointment of a board of viewers. Thus, plaintiff's appeal should be dismissed.