# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Mieze and Lorraine Mieze      :
     :
            v.            :     No. 902 C.D. 2021
     :     ARGUED:  October 11, 2022
City of Pittsburgh,      :
                Appellant      :


BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                 **FILED:  January 30, 2023**


Appellant, City of Pittsburgh, appeals from an order of the Court of Common Pleas of Allegheny County overruling the City's preliminary objections and granting the amended petition for appointment of viewers filed by Landowners, Richard and Lorraine Mieze, pursuant to Section 502(c) of the Eminent Domain Code, 26 Pa.C.S. § 502(c) (*de facto* taking).  Following a landslide on Landowners' property, the trial court determined that the City's inaction after the event and an apparent stalemate between two of its departments, the Department of Mobility and Infrastructure (DOMI) and the Department of Permits, Licenses, and Inspection (PLI), constituted a *de facto* taking.  We disagree and, therefore, reverse.

The background of this matter is as follows.[1] Landowners' property is located at 2604 Ivyglen Street in the City's Overbrook neighborhood. The property consists of a residential and commercial structure, along with an outside parking area. Landowners' property (Lot No. 138-F-97) sits on a slope above property owned by the City. (Lot No. 138-F-94). "On or about June 23, 2018, following a spring season with heavy rain, a landslide occurred on the City['s] [p]roperty, causing mud, rocks, and other debris to move downhill and into Saw Mill Run." (July 9, 2021 Joint Stip. of Facts "S.F." No. 2; Reproduced R. "R.R." at 420a.) Thereafter, the City condemned Landowners' structure as unsafe for human habitation such that the only tenant remaining was the one who rented the outside parking area, stating that "[t]he City will not permit habitation of the structure until it has been made safe." (S.F. No. 11; R.R. at 420a.) Before the landslide, Landowners rented their property to four tenants for a total of $1595 in monthly rent. Consequently, with the exception of one tenant, Landowners have been unable to collect rent since the City's condemnation. (S.F. No. 12; R.R. at 420a.)

Subsequently, Landowners sought an occupancy permit. Pursuant to their permit submission, Mr. Mieze provided the City with a geotechnical report, engaged an architect to prepare diagrams and sketches in connection with the necessary repair work, and secured an estimate for brick work. (S.F. No. 13; R.R. at 421a.) He did not obtain an evaluation of the structure's foundation, asserting that the City never explicitly requested one but that he would have obtained one had the City done so. (S.F. Nos. 14-16; R.R. at 421a.) Nonetheless, Mr. Mieze acknowledged a September 2019 letter from D'Appolonia Engineering, the outside firm that the City hired to conduct a geotechnical evaluation, stating that before

_____

[1] The trial court based its recitation of facts on the parties' joint stipulation of facts. (July 9, 2021 Joint Stip. of Facts at 1-7; Reproduced R. "R.R." at 419a-25a.)

2

"permitting reoccupation of the structure, a detailed evaluation of the foundation conditions should be made and the conditions either be proven acceptable or measures be designed and constructed to provide adequate foundation support for the structure in the event of the future propagation of the slide toward the structure." (S.F. No. 14; R.R. at 421a.) Further, in a report dated August 7, 2019, D'Appolonia recommended to the City that it remediate the hillside in order to avoid additional landslides and to protect Landowners' property. (S.F. No. 22; R.R. at 423a.)

In August and September of 2019, the Chief Engineer for DOMI reviewed D'Appolonia's report and inspected the hillside. Based on the Chief Engineer's review and determination that no additional action was needed, the City advised Mr. Mieze that the City would not do the work D'Appolonia recommended. (S.F. Nos. 24 and 25; R.R. at 423a-24a.) Thereafter, D'Appolonia sent a letter to PLI stating that D'Appolonia did "not believe that the existing slope geometry provides a satisfactory long-term factor of safety against slope failure." (S.F. No. 26; R.R. at 424a.) D'Appolonia therefore recommended that Landowners' property not be re-occupied "until the long-term stability of the slope is improved." (*Id*.) Thus, PLI did not issue any permits.

In an amended petition for appointment of viewers, Landowners alleged that the City effectuated a *de facto* taking of their property as a result of its actions and inactions following the landslide. (Nov. 16, 2021 Am. Pet., ¶ 17; R.R. at 8a.) The City filed three preliminary objections, which the trial court overruled, citing the City's failure to ameliorate the situation after the landslide and the apparent gridlock between the two departments. The trial court concluded that the departmental stalemate "created an injury as a direct result of inaction by the City,

3

incidental too [sic] its exercise of eminent domain power." (Sept. 28, 2021 Trial Ct. Op. at 13.) The City's appeal followed.

On appeal, the dispositive issue is whether the trial court erred in determining that the City effectuated a *de facto* taking. Section 502(c) of the Eminent Domain Code provides that an owner of a property interest may file a petition for appointment of viewers alleging an injury to property without the filing of a declaration of taking. There is a heavy burden of proof in *de facto* taking cases. *Griffith v. Millcreek Twp.*, 215 A.3d 72, 75 (Pa. Cmwlth. 2019). The owner must allege and prove the following: 1) condemnor has the power to condemn the land under eminent domain procedures; 2) exceptional circumstances have substantially deprived the owner of the use and enjoyment of the property; and 3) the damages sustained were the immediate, necessary, and unavoidable consequences of the exercise of eminent domain. *Appeal of Jacobs*, 423 A.2d 442, 443 (Pa. Cmwlth. 1980). The power of eminent domain has been described as "the power to take property for public use" without the property owner's consent. *Hill v. City of Bethlehem*, 909 A.2d 439, 444 (Pa. Cmwlth. 2006).

In the present case, the first two criteria are satisfied. The City has the power to condemn land and exceptional circumstances substantially deprived Landowners of the use and enjoyment of their property. The landslide constituted the exceptional circumstances and Landowners' loss of rental income constituted the loss of the use and enjoyment of their property. *See Gaughen v. Dep't of Transp.*, 554 A.2d 1008, 1014 (Pa. Cmwlth. 1989) (holding that *de facto* taking may occur when a government entity's action causes an owner to lose tenants and the ability to generate rental income).

4

Disputed here is the third criterion—that the damages sustained were the immediate, necessary, and unavoidable consequence of the exercise of eminent domain. It is well settled that a *de facto* "taking occurs when an entity clothed with the power of eminent domain has, by even a non-appropriative act or activity, substantially deprive[d] an owner of the beneficial use and enjoyment of his property." *Genter v. Blair Cnty. Convention & Sports Facilities Auth.*, 805 A.2d 51, 55 (Pa. Cmwlth. 2002). As noted, however, "a *de facto* taking requires that the injury complained of [be] a direct result of intentional action by an entity incidental to its exercise of its eminent domain power." *In Re Mountaintop Area Joint Sanitary Auth.*, 166 A.3d 553, 562 (Pa. Cmwlth. 2017) (*DeLuca*).

Here, Landowners' damages resulted from several factors, none of which can reasonably be characterized as intentional action by an entity incidental to its exercise of its eminent domain power. The first such factor was the landslide itself. As the parties stipulated, "[a]t the time of the landslide and in the period immediately preceding [it]," the City did not engage in any earth moving, excavation, or similar activity that would have destabilized the slope. (S.F. No. 8; R.R. at 420a.) In other words, the landslide itself was simply an act of God. In addition, they agreed that "[f]ollowing the landslide's destabilization of the structure on [Landowners' property], the City deemed the structure unsafe and unfit for human habitation, and therefore condemned it . . . ." (S.F. No. 10; R.R. at 420a.) Therefore, the initial condemnation was clearly an exercise of police power and not of eminent domain and the same must be said of the refusal of PLI to issue permits until the hillside was stabilized. It was within the purview of the City by virtue of its police power both to determine whether Landowners' structure was structurally sound and to require studies of the structural safety of the foundation as part of the

5

permitting process. *See Est. of Blose ex rel. Blose v. Borough of Punxsutawney*, 889 A.2d 653, 659 (Pa. Cmwlth. 2005) (borough's demolition of a dangerous building was a valid exercise of its police powers rather than a taking without due process of law). Having concluded that Landowners' structure was unsafe, the City ordered its closure.

Further, the City's failure to follow D'Appolonia's recommendations and the dispute between DOMI and PLI as to whether D'Appolonia's recommendations were necessary can hardly be characterized as intentional action causing Landowners' damages. The City's decision not to follow D'Appolonia's recommendations, such as building a retaining wall, simply constituted a failure to act in order to avoid or to mitigate potential future harm resulting from a future act of God. By way of contrast, the sanitary authority in *DeLuca* intentionally took action that caused harm to a property owner by virtue of its choice to operate its system in a manner causing reoccurring sewage infiltration events onto the property and its failure to take the necessary steps to remedy the structural defects in its system despite its knowledge that the system as designed and built continued to cause reoccurring infiltration events. *DeLuca*, 166 A.3d at 564; *see also Greger v. Canton Twp.*, 399 A.2d 138 (Pa. Cmwlth. 1979) (*de facto* taking where lower court concluded that the flooding of the property was the direct and necessary consequence of the township's drainage plans). In that respect, the instant case is analogous to *Griffith*, where the landowners alleged that the township's design, construction, review, acceptance, operation, and maintenance of the subdivision's storm water system caused a landslide on their property, thereby rendering their home

6

uninhabitable, but this Court found no *de facto* taking in the absence of an intentional action by the township incidental to its power of eminent domain.[2]

We do not condone the City's failure to resolve the engineering dispute between its departments and either to stabilize its property as its expert recommended or to accept DOMI's conclusion that the land was sufficiently stable to allow Landowners to proceed with necessary repairs. We express no opinion as to whether the City's behavior amounts to an actionable wrong, only that we are not here confronted with an exercise of the power of eminent domain. Accordingly, we conclude that Landowners failed to meet their burden to establish a *de facto* taking, and we must reverse.

 

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[2] In *Griffith*, we observed that the township might have been negligent in the planning and operation of its storm water system. 215 A.3d at 77. However, as we noted in *Griffith,* the issue of the township's potential negligence was not before us. Consequently, we expressed no opinion concerning it.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Richard Mieze and Lorraine Mieze :
:
v. : No. 902 C.D. 2021
:
City of Pittsburgh, :
Appellant :

# **O R D E R**

AND NOW, this 30th day of January, 2023, the order of the Court of Common Pleas of Allegheny County is hereby REVERSED.

_____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita